THE STATE, JOHN FITZGERALD AND JOHN CLINTON, PROSECUTORS, v. THE MAYOR AND COMMON COUNCIL OF NEW BRUNSWICK.

1. An act (*Pamph. L.* 1885, *p.* 163,) which provides that no person shall be removed from office or employment in the police department of any city for political reasons, or for any other than certain prescribed causes, and also provides a method of trial for all officers, is a general act and constitutional.
2. For the purposes of this legislation cities constitute a class.

---

This writ of *certiorari* brings up a resolution of the common council declaring vacant the offices of the chief of police and patrolmen in the city of New Brunswick, and the resolution appointing another chief of police and other policemen in the places declared vacant.

Argued at June Term, 1885, before Justices DEPUE, SCUDDER and REED.

For the prosecutors, *W. P. Voorhees* and *Alan H. Strong.*.

For the defendants, *J. K. Rice* and *C. T. Cowenhoven.*

The opinion of the court was delivered by

REED, J.   On the evening of July 6th, 1885, the common council of the city of New Brunswick, by a majority vote,. declared that the offices of chief of police and of patrolmen in the city of New Brunswick were vacant.   Afterwards, on the same evening, a new chief of police and new patrolmen were voted for, and upon receiving a majority of votes were declared to be appointed to the places of the officers whose positions had recently been declared vacant.

This writ brings up these resolutions, and they are attacked on the ground that the common council had no power to so. vacate and fill the respective offices.

It is admitted that no cause was assigned for the vacation of the offices, nor any hearing accorded to the officials previous to the passage of the resolutions.   The proceedings were taken in asserting an absolute power of removal of the old force at the will of the appointing body.   It is not denied that up to. March 25th, 1885, the power which was exercised by the common council was lodged in that body.   The power of the common council previous to that date seems to have been defined by an ordinance passed in 1870, which provided that every person appointed under the provisions of the ordinance to establish and regulate the police department of the city of New Brunswick should continue in office until the office for which he shall have been appointed shall be declared vacant,. or until another person shall be appointed to succeed him and shall enter upon the duties of his office.   The action of the common council now before us was in strict compliance with the provisions of this ordinance.

On the 25th of March, 1885, an act was passed by the legislature which was designed, obviously, to restrict the theretofore unrestrained power of removal of officers or employees in the police departments of some cities.

The first section of this act provides that in the several cities of the state the officers and men employed by municipal authority in the police department of any city shall severally hold their respective offices, and continue in their respective employment as such municipal officers and employees, during good behavior, efficiency, and residence in such city, except where by statute the term of office of any such officer and employee is determined and fixed, and does not depend upon the pleasure of any municipal officer, officers or board authorized to make appointment or employment in said department.

It further provides that no person shall be removed for political reasons or for any other cause than incapacity, misconduct, non-residence or disobedience of just rules and regulations established for the police department of such city.

The fifth section of the act provides for the method in which charges shall be preferred against and the manner in which the trial of any police officer shall be conducted.

If this statute is not obnoxious to the criticisms of defendants' counsel directed against its constitutionality, it seems to cover the acts of the common council under review. The argument addressed to the court to the point that this is a general act, and so would not operate to repeal the provisions of the charter of New Brunswick upon this special matter, is not sound. Whenever the intent to repeal a special act by a general statute is apparent, the legislative intent will be effectuated.

It would be difficult to frame an act where the intent to reach and alter the provisions of all city charters in this respect could be more conspicuous than in the present statute. It in terms applies to all cities having policemen whose term of service is not fixed by statute. Upon this ground of objection to the operation of the act it is clear that the act is intended to repeal this provision in the charter of New Brunswick.

It is objected, however, that this act is unconstitutional, because it is a special statute regulating the internal affairs of cities. That it regulates the internal affairs of certain cities,

among which is New Brunswick, is not a matter for contention. The ground of contest is in regard to the character of the statute as to the generality of its operation. The counsel for defendants contend that the act is a specimen of special legislation, and that its lack of generality consists, first, in its failure to operate upon the police departments of all cities; and second, its failure to reach municipalities not cities, yet having police departments, the members of which were removable at pleasure.

First, then, does the failure of this legislation to operate upon the police departments of all cities fasten upon the act a special or local character?

The test of proper classification has been announced as a grouping of objects having characteristics sufficiently marked and distinguished to make them a class by themselves, having regard to the object of the legislation.

If we admit the contention of the counsel for the defendant, to be well grounded, namely, that it applies only to cities whose police officers hold their places at will, and apply that test to this legislation, it still appears to conform to the standard erected. The legislation applies to all cities whose internal affairs are such as permit the operation of the terms of this act. It is appropriate legislation in respect to those cities having police departments whose officers hold their terms of service at the will of the appointing body, and inappropriate to those cities whose policemen hold their places for a fixed term by authority of a statute.

Tested by the formula above stated the legislation seems entirely above criticism. I am not satisfied, however, that this rule can be regarded as a universal test of generality in legislation concerning the internal affairs of cities. In the case in which it was first announced it was clearly correct. It was in the case of *Van Riper* v. *Parsons*, 11 *Vroom* 123. The act concerning which the rule was announced was one which repealed a feature of municipal government in Jersey City, which was peculiar to that city alone. The legislation destroyed a feature of municipal government which was

anomalous in the affairs of the cities in this state, and so long as the act operated to extinguish it wherever it might exist it was general legislation, although but one city was touched by its operations.

It conserved the purpose of the constitutional provision, in that it tended to produce homogeneity of municipal government among the cities of the state.

The test can also be applied in all instances where the characteristics which segregate the cities into groups are the result of physical differences. I mean by this, differences in population, in location, or in the character of the industries carried on in each.

The illustrative instances in former opinions of what might be regarded as a grouping by characteristics are nearly all of this character. Examples of what might be regarded as general acts were mentioned *arguendo* in the opinions in the following case. Thus a statute providing that all cities containing a population of over a certain number should have a given number of polling-places, and cities containing a lesser number should have a prescribed lesser number. *Van Riper* v. *Parsons*, 11 *Vroom* 1. A statute giving to all cities bordering upon tide-water the power to construct docks or provide quarantine regulations. *Anderson* v. *Trenton*, 13 *Vroom* 486, or the privilege of using such tide-water in connection with their sewers. *State* v. *Hammer*, 13 *Vroom* 435. A statute legislating for cities only having a superintendent of wharves in regard to such. *Hammer* v. *State*, 15 *Vroom* 667. These are obvious instances of differences which result from physical causes, which the legislature cannot obliterate.

As legislation adapted to the needs of such cities as by reason of physical causes have distinctive legislative needs cannot reach all cities, therefore whenever it does reach all the cities which have the features which make such legislation appropriate, it is general.

In respect to cities divided by such peculiar features an appropriate grouping is not difficult. When we turn from cities which differ by reason of physical causes to those whose differences consist in diversities of municipal government

merely, it seems to me a matter of difficulty to recognize the rules already announced as a test of generality in legislation.

At the time of the adoption of the constitutional amendments there were innumerable diversities in the features of the municipal government in different cities resulting from previous individual charters. There may have been several different methods of organizing a school board or a police board; as many methods of procedure; as many modes of appointing; of discharging; of paying teachers or policemen. One school board may have had power to furnish books for all the pupils in the public schools, another board power to supply indigent pupils only, and still another board no power to furnish books to any pupil. Now, it is obvious that the creation of such diversities since the adoption of the present constitution would be beyond the ability of the legislature. It would be impossible, for instance, for the legislature to create a board of education in one city which would have power of a certain scope, and in another city a board with authority of a different kind.

Now, it seems to me that aside from repealing acts like that under consideration in *Van Riper* v. *Parsons, supra,* legislation which applies to a city which has no characteristic, or to more than one city each having no characteristic to distinguish it or them from all other cities, except such peculiarities of government as are created by previous local legislation, is not general legislation. And I think this is so even if the legislation appertains only to the changing or modification of the feature which marked the nine cities to which it applies as a group.

If one city only, for instance, has a school board with power to furnish books for children, I do not perceive why an act changing this power to one which gives authority to furnish books to indigent children, or *vice versa,* is a general act, because it applies to all cities with boards having power to purchase books. The classification is vicious, because it depends upon previous local legislation. The recognition of such local legislation by relying upon it as a foundation for

new legislation which only changes, perpetuates or perhaps increases the previous local or special features created by special charters, is as inimical to the constitutional provision as if the last legislation created the diversity which it perpetuates. If all the special features of our city charters can be changed with only the feeble restriction that the statute which changes them it shall apply to any other city or cities which may happen to have similar features, then it will be a distant day when that homogeneity in the municipal governments of the state, which the constitutional amendment was designed to bring about, will be attained. My view is that any legislation touching any branch of municipal government which is common to all cities, must include all cities, or reduce all cities to uniformity in respect to the particular with which the legislation deals. Schools, police, poor, streets, are common to all cities; therefore, any legislation which applies in any respect to one of these subjects must apply to all municipalities alike. An exception to this rule is admitted in the case of repealing acts like that in *Van Riper* v. *Parsons, supra.* The views above expressed seem to me to be fortified by the decision of this court and the Court of Errors and Appeals in the case of *State* v. *Hammer,* 13 *Vroom* 435; *S. C.,* 15 *Vroom* 567.

The act under consideration was entitled "An act relating to the assessment and revision of taxes in cities of this state." It provided that in any city of this state where a board of assessment and revision of taxes now exist the board shall hereafter consist of four members.

The act then proceeded to remodel the constitution of the board in the two cities which alone had boards. The act, it is perceived, applied to the only cities which had this feature which existed by reason of previous local legislation, and it appertained to the modification or alteration of that feature which distinguished these cities from the rest. Yet the act was held to be special, the Chancellor remarking: "How does the fact that taxes are assessed by a board of assessors in one or more municipalities constitute such a difference between

those municipalities and the others where the taxes are· assessed· by individual assessors, as to warrant the legislature· in specially interfering in the affairs of the former to such an extent as it has attempted to do in the legislation under consideration?"

Now, turning again to the statute under consideration we find the opening clause of the first section recognizing two· classes of police officers, namely, the class which hold their terms determined and fixed by statute, and the class whose term depends upon the pleasure of any municipal officer or officers, or board authorized to make appointment or employment in a police department, and it legislates for the latter class exclusively.

Inasmuch as in the view already expressed all policemen are included within a class, therefore if this clause stood alone· it would, in my judgment, be a specimen of special legislation.

But it is urged that this language can be disregarded, and that the remaining portion of this section, as well as all of the following sections of the act, applies to all policemen, or· reduces the condition of all policemen in respect to the subject matter of the legislation to a uniform *status*. In looking at this portion of the act the generality of the application of the words must be admitted.

· The concluding part of section 1 provides that no person shall be removed from office or employment in the police department of any city for political reasons, or for any other· cause than incapacity, misconduct, &c.

The fifth section regulates the course of procedure against any officer of any department, and the other sections are equally comprehensive in their provisions.

Now, although there are cities in which the duration of the terms of police officers seems to be limited by charter provi-· sions, yet I think there is no city in which the power of removal of such officers in some shape does not exist, and I am sure there is no city in which it may not exist. It may· exist in some cities at the will· of some municipal officer or·

body of officers, in other cities for some specified causes, and in yet other cities for still other causes.

For the trial of the officers where the removal is for cause, the proceedings may be as variant as the cities are numerous. The present act in respect to the cause for which removal shall be made, and the method of procedure by which it shall be effected, reduce all cities to uniformity, and applies to all policemen and to all departments. In this aspect the legislation is general.

It is secondly objected that the act does not apply to municipalities other than cities. It is remarked that there exists in the state some municipalities which, under the name of boroughs, have populations as great and interests as important as some municipalities incorporated under the name of cities. That in the charters of the former are clauses almost or entirely identical with that of the city of New Brunswick, and other cities of the state, in regard to the organization and control of the police department. This all appears to be true. It is therefrom argued that a classification which includes only cities, is not valid in respect to legislation concerning a subject like this, which is common to both cities and boroughs. Could the point involved in this contention be now regarded as open for discussion, untrammeled by previous judgments, it would present, in my opinion, a question not easily resolved in favor of the classification. But the recognition of cities as a class for legislative purposes in respect to other subjects, as obviously common to both cities and boroughs as this, seems to have been too frequent to be now disregarded in this court.

No subject would seem to be of more general and uniform importance to both cities and boroughs than that of assessments for local improvements. Yet the recognition of the validity of statutes in regard to this subject, applying alone to cities, has been frequent. *State, Henderson, pros.*, v. *Jersey City,* 12 *Vroom* 487 ; *Mayor, &c., of Jersey City* v. *Green,* 13 *Vroom* 627 ; *Turrell* v. *Elizabeth,* 14 *Vroom* 272 ; *Mayor of Jersey*

*City* v. *Carson*, 14 *Vroom* 664; *Righter* v. *Newark*, 16 *Vroom* 104.

So the power to construct sewers, and assess property-owners for the same, is common to some, if not all, boroughs as well as cities, yet the act of 1878, *p.* 344, entitled "An act respecting assessments for constructing sewers or continuations of sewers, running through adjoining cities," was held to be general in its application. *Green* v. *Hotaling*, 15 *Vroom* 347.

Again, an act passed in 1881 provided that any officer in any city in this state who holds any office for a fixed term, should continue to hold such office until his successor has been qualified.

Officers of the same class, and with the same fixity of terms, are as common to boroughs as to cities, yet the act was held valid. *Stilsing* v. *Davis*, 16 *Vroom* 390.

The case of *Hightstown* v. *Glenn*, 18 *Vroom* 105, cited in opposition to the view that the present act is general, did not necessarily involve the question whether cities and boroughs were within one class for the purpose of legislation concerning the granting of tavern licenses.

The act there under review was based upon an arbitrary classification of different boroughs, and applied to boroughs of the third class alone. For this reason the act was clearly special.

The opinion placed the vice of the legislation upon the ground that it was based upon population alone, and did not hold that a class which included all cities, or all boroughs, was not general.

In view of the array of cases in which classification similar to this has been already recognized, I am constrained to regard the present as a general act.

There is also a question raised in regard to the propriety of the use of the writ of *certiorari* in this case, inasmuch as the resolutions brought up appertained to an office, and so this writ involved the right to such office. The contention was that *quo warranto* was the appropriate writ.

I think this case is entirely within the rule laid down in the case of *Bradshaw* v. *City Council of Camden*, 10 *Vroom* 416.

My conclusion is that the resolutions must be vacated.