E. P. ALEXANDER *vs*. CITY OF DULUTH.

Submitted on briefs April 16, 1894. Reversed April 20, 1894.

No. 8487.

**Laws 1893, ch. 210, invalid.**

Laws 1893, ch. 210, entitled "An act to authorize the construction of tunnels by cities in certain cases," *held* to be in conflict with the constitution, Art. 4, § 33, as amended in 1892, prohibiting the passage of any local or special law regulating the affairs of any county, city, etc., for the reason that the second section of the act adopts, and applies to the subject, existing special legislation contained in the charters of the various cities.

**Uniformity in the affairs of cities; as to mode as well as to causes.**

Under this constitutional provision, any act regulating the affairs of a city must reduce all cities, or all cities of the same class, to uniformity, in respect to the particular with which the legislation deals, as to the mode, as well as to the causes, of the exercise of the granted power.

**Provisions of special charters can not be adopted and extended.**

Any act which adopts and extends existing special legislation is as obnoxious to the constitution as if it created the special legislation which it thus attempts to extend and perpetuate.

Appeal by plaintiff, E. P. Alexander, from an order of the District Court of St. Louis County, *J. D. Ensign*, J., made September 11, 1893, sustaining a demurrer to the complaint.

The plaintiff is a resident and taxpayer of the city of Duluth and brings this action in behalf of himself and all others similarly situated, to restrain the defendants, the city, the Common Council, Mayor and Board of Public Works of Duluth from using or allowing to be used any of the funds of the city in the construction of a

proposed tunnel from the main shore to Minnesota Point under the ship canal that connects the lake with the bay of Duluth. The complaint states they are about to expend a million dollars in such enterprise claiming to have authority under Laws 1893, ch. 210; that the statute is in conflict with the Constitution, Art. 4, § 33, as amended in 1892, and is void. The defendants demurred to the complaint and the sole question in issue was the constitutionality of that statute. The court held the statute to be valid and sustained the demurrer. Plaintiff appealed.

*Allen & Baldwin,* for appellant.

Laws 1893, ch. 210, is in reality a special act. *Nichols* v. *Walter,* 37 Minn. 264; *Allen* v. *Pioneer Press Co.,* 40 Minn. 117; *State* v. *Sheriff of Ramsey Co.,* 48 Minn. 236.

This statute was drawn by men who had these and other cases in mind, with a view of avoiding as far as possible the objections covered by these cases. The objection, however, to special legislation is one of substance and not of form. We may not be able in this case to point out any provision on the face of this act which of itself renders the act invalid, but we believe that a consideration of the peculiar provisions of the entire act will show it to be special legislation. It is designed to apply to certain conditions existing in the city of Duluth and is so drawn as not to apply to similar conditions existing or possible elsewhere in the State of Minnesota.

The act is not uniform in its operation throughout the state. In order that it may be carried into effect by the different cities, different methods of carrying on condemnation proceedings, of making assessments and of collecting the same, are employed in the various municipalities. Under the constitutional provision it is unlawful to make laws assessing benefits and damages through the diverse ways of this local legislation. If this part of the act be declared unconstitutional the rest cannot stand.

*H. F. Greene,* for respondents.

If we concede that the law should be uniform in its operation this statute fully complies with the requirement. This clause of the constitution means that the law should, so far as itself is concerned, work uniformly, not that its effect should be uniform, in

connection with other laws of a special and local character. Such lack of uniformity will not result from the operation of this law.

The general character of the law is not affected by the circumstances that there may be but a single locality falling within its operation, provided it is so framed as to be applicable to others if such should either presently exist or otherwise arise. The question is not as to the number of cases involved, but as to the rational basis for the classification irrespective of numbers.

The fact that the city may undertake this improvement when it deems the public interests require it so to do, that bonds may be issued without popular consent, and that it may be made without regard to the remonstrances of property owners are clearly matters of policy and have no bearing on the question whether the act is general or special, uniform or local, in its operation.

MITCHELL, J. The only point made on this appeal is that Laws 1893, ch. 210, entitled "An act to authorize the construction of tunnels by cities in certain cases," is invalid. Several objections to the act are alleged; but the only one which we find it necessary to consider is that it is in violation of the constitution, Art. 4, § 33, as amended in 1892, which provides that "the legislature shall pass no local or special law regulating the affairs of * * * any county, city, village," etc.; also, that "the legislature may repeal any existing special or local law, but shall not amend, extend or modify any of the same." We have had occasion so recently, in *State ex rel.* v. *Cooley*, 56 Minn. 540, (58 N. W. 150,) to fully consider this constitutional provision, that no extended discussion of its construction or application is required at this time. We discover nothing in the first section of the act that is obnoxious to the constitutional provision referred to. It authorizes any city which is or shall be so divided by unbridged navigable waters that portions thereof are inaccessible to each other, except by water transportation, if, in the opinion of the city council, the bridging of such water way would be impracticable, and the public interests require it, to construct a tunnel under such water way, so as to connect the divided portions of the city. It seems clear to us the physical condition of things here stated constitutes such substantial distinctions "as to suggest the necessity of different legislation with respect to it."

v.57M.—4

*Nichols* v. *Walter*, 37 Minn. 264, (33 N. W. 800;) *State ex rel.* v. *Cooley, supra.* The classification in that respect is complete, for it applies to every city, whether one or many, which is, or may hereafter be, similarly situated.

But it seems to us that the second section of the act is clearly repugnant to the constitution. After providing that property specially benefited by the improvement may be charged and assessed for a part of the expense, it then provides that "all proceedings with reference to such improvement and the making of the con-tract therefor, and the making and enforcement of assessments and re-assessments therefor, and for the procurement of funds for carrying on the work upon said improvement including all proceedings for the exercise of the power of eminent domain in connection with said improvement, shall, except as herein otherwise provided, con-form as nearly as the nature of the case will admit, to proceedings which at the time shall obtain in the particular city, with reference to the grading and improvement of streets and the assessments therefor, it being the intention hereof that said improvement shall be considered as equivalent to the opening, grading and paving or macadamizing of a street, and subject, except as herein other-wise expressed, to the provisions of the several city charters with respect to the said last named improvements * * * and as-sessments therefor shall * * * be divided into the greatest number of annual installments, if any, which in the particular city may be admissible with reference to assessments for the grading, paving or macadamizing of streets."

If cities were organized and governed under and by a general law operating uniformly on all cities in the state, or upon all of each class, according to a proper basis of classification, it would have been entirely competent for the legislature to adopt the provisions of such a law by reference, and apply them, without repeating them in this act. But that is not the situation. We will take judicial notice of the fact that most, if not all, cities were, at the date of the adoption of the constitutional amendment, and still are, organized and governed under special charters containing about as many diverse provisions on the subjects enumerated in the second section of this act as there are charters. It would, perhaps, be difficult to find any two city charters whose provisions on these subjects are

entirely alike. This is certainly special legislation which the legislature could not now pass, and which it is expressly prohibited from amending, extending, or modifying.

But instead of passing a general law, the provisions of which would operate uniformly on all cities, or all cities of the same class, the legislature has attempted, as to all matters specified in the second section, to adopt this whole mass of existing diverse special legislation, and extend its application to another and new class of cases, so that in proceedings to construct tunnels, under the act, there will be as many different laws as there are special city charters. This cannot be done. As is said in *Fitzgerald* v. *New Brunswick*, 47 N. J. Law, 484, (1 Atl. 496:) "The recognition of such local legislation by relying upon it as a foundation for new legislation which only changes, perpetuates, or perhaps increases, the previous local or special features created by special charters, is as inimical to the constitutional provision as if the last legislation created the diversity which it perpetuates. If all the special features of our city charters can be changed [or extended] with only the feeble restriction that the statute which changes [or extends] them shall apply to any other city or cities which may have similar features, then it will be a distant day when that homogeneity in municipal government of the state which the constitutional amendment was designed to bring about will be attained." Previous special legislation can never be made the basis of classification, and the legislature cannot touch it, except to repeal it.

Our view is that, under this constitutional amendment, any legislation touching any branch of city government must reduce all cities, or all cities of the same class, to uniformity in respect to the particular with which the legislation deals, and that this uniformity in the exercise of a granted power must be produced as to the mode, as well as to the causes, of its exercise. How far the second section of this act falls short of this will be apparent when it is considered that the situation is the same as if it expressly enacted, seriatim, all the diverse provisions of the various city charters on the subjects referred to.

The first part of the third section of the act is perhaps subject to the same objection, but we have no occasion to consider it.

The other provisions of the statute are so connected with, and

dependent upon, the provisions of section 2, that if the latter are invalid the entire act must fail.

Order reversed.

BUCK, J., absent, sick, took no part.

(Opinion published 58 N. W. 866.)