STATE ex rel. CITY OF ST. PAUL and Another v. WILLIAM R. JOHNSON.

October 23, 1899.

Nos. 11,942—(216).

**Laws 1899, c. 40, Unconstitutional—School District.**

*Held*: Laws 1899, c. 40, is special legislation regulating the affairs of school districts. It is, in effect, an attempt to adopt as part thereof the provisions of a number of diverse and special laws relating to the management of public schools in three cities, of over 50,000 inhabitants each, in this state, and therefore contravenes sections 33 and 34 of article 4 of the constitution, prohibiting such special legislation, and is void.

Alternative writ of mandamus issued by the district court for Ramsey county to compel respondent, as county auditor of said county, to calculate the rate per cent. on the assessed valuation of the taxable property of the city of St. Paul necessary to raise the sum of $112,000, and to extend the same on the tax rolls. From an order, Brill, Otis, Bunn, Lewis, and Jaggard, JJ. (Kelly, J., dissenting), directing a peremptory writ to issue, respondent appealed. Reversed.

*Horace E. Bigelow* and *Fred W. Zollman,* for appellant.

*Walter L. Chapin,* for respondents.

Under Const. art. 4, §§ 33, 34, the test to determine whether a law is special or general is the law itself, not the sum total of all the legislation past and present on the subject. The law is general and uniform if the results flowing from it alone are uniform in all the cities of the class to which it applies. So far only as such general laws are inconsistent with prior special laws are the special laws to give way. The constitution in terms requires uniformity only

in future laws. The act in question is uniform in its operation. It confers a power of taxation on the cities as a class equal as to all. State v. Sullivan, 72 Minn. 126, 132. If it is also a general law, all the requirements are fulfilled. Under Const. art. 4, § 36 (Laws 1899, p. vi.), legislation in city affairs which applies to cities of over 50,000 inhabitants is authorized. On grounds of public policy, it is desirable that, as cities grow, methods of raising money for schools should differ from those in smaller communities. This is matter largely for legislative judgment and discretion, which will not be interfered with by the courts. So many reasons exist why different powers and restrictions should prevail, that it sufficiently appears that the classification is not arbitrary. State v. Sullivan, supra; State v. Spaude, 37 Minn. 322; State v. Cooley, 56 Minn. 540, 545; State v. Central, 48 N. J. L. 146, 310; State v. Hoagland, 51 N. J. L. 62. The law is not based on other laws, and hence Alexander v. City of Duluth, 57 Minn. 47, 49, and Bowe v. City of St. Paul, 70 Minn. 341, do not apply. State v. Copeland, 66 Minn. 315, did not turn on whether the law was special because founded on other laws, but whether it lacked the uniform application required by Const. art. 4, § 34. It is contended that the law must be read with the city charter and that so interpreted it provides as a matter of construction of this law that the total levy in St. Paul may be four mills, in Minneapolis five and one-half mills, etc. This contention is contradicted by the law itself, but if the law were so construed it would follow that when the charters are repealed this act would be incapable of intelligent interpretation, which is an absurdity. The court will construe a law as constitutional if susceptible of such construction. State v. Schoenig, 72 Minn. 528, 532. Const. art. 4, §§ 33, 34, were not intended to require repeal of existing special laws as a condition to future legislation, but exacted uniform and general legislation for the future. State v. Egan, 64 Minn. 331, 336; State v. Sullivan, supra.

The actual levy of the tax should be by resolution of the council, and is not dependent on prior tax estimates or other provisions of local law, as the new enabling act is independent of prior special acts. 1 Dillon, Mun. Corp. § 258 et seq.; State v. Common Council of City of St. Paul, 25 Minn. 106, 109. It may be doubted whether

the act modifies existing special laws; but if it does, this is legiti-
mate.  A repeal by general law is proper.  State v. Sullivan, supra;
State v. Copeland, supra.  The restrictions against legislation
should not be given a scope beyond what the people had in mind
when adopting them.  State v. Sullivan, supra.

CANTY, J.[1]

Laws 1899, c. 40, is assailed as unconstitutional special legisla-
tion.  So far as here material, section 1 of the act provides as fol-
lows:

"Section 1.  Cities now or hereafter having over 50,000 inhab-
itants are hereby empowered to raise annually by taxation, inde-
pendently of and in addition to other sums for school purposes,
authorized by law, an amount not exceeding one and one-half ($1\frac{1}{2}$)
mills on each dollar of the assessed valuation of taxable property
within such city," for school purposes.

St. Paul comes within the class of cities designated in the act,
and on September 11, 1899, the city council of that city, under and
pursuant to this act, appropriated $112,000 for the support of the
public schools of the city, in addition to the amount already appro-
priated by the council for school purposes under the special law
regulating the public schools of that city.  The county auditor of
Ramsey county refused to extend said sum of $112,000 upon the tax
rolls of the city, and mandamus was brought to compel him to do so.
The court below held said chapter 40 constitutional, and ordered
the writ to issue.  The auditor appeals.

The cities falling within the class at the time of the passage of
the act and at the present time are Duluth, St. Paul, and Minne-
apolis.  Before the passage of this act the maximum limit of annual
taxation for school purposes was different in each of these three
cities.  The limit in Duluth was that provided by the general school
law (see Sp. Laws 1891, c. 312, § 13), which was 9 mills on the dollar
prior to 1899 (see G. S. 1894, § 1558), and by the amendment made
to the general law by Laws 1899, c. 117, the maximum limit is now
15 mills on the dollar.  The limit in St. Paul was $2\frac{1}{2}$ mills on the

[1] BUCK, J., absent.

dollar (see Sp. Laws 1891, c. 36, § 6). The limit in Minneapolis was 4 mills on the dollar (see Sp. Laws 1885, c. 86).

Section 33 of article 4 of the constitution provides:

"The legislature shall pass no local or special law regulating the affairs of, or incorporating, erecting or changing the lines of any county, city, * * * school district, * * *. The legislature may repeal any existing special or local law, but shall not amend, extend or modify any of the same."

Section 34 provides:

"The legislature shall provide general laws for the transaction of any business that may be prohibited by section one of this amendment, and all such laws shall be uniform in their operation throughout the state."

The majority of the court, including myself, are of the opinion that the 1½ mills on the dollar which chapter 40 authorizes to be levied in each city of the class must be levied under and pursuant to the diverse and special acts already in force in each city; that is, the legislature has adopted three diverse and special acts as a part of chapter 40. As held in Alexander v. City of Duluth, 57 Minn. 47, 58 N. W. 866, this is unconstitutional special legislation. Counsel for respondents contend that, by reason of the provisions of section 2 of chapter 40, it cannot be held that the legislature has adopted as a part of that act all of these diverse provisions of the different general and special acts. Said section 2 reads as follows:

"This act shall be construed as an independent and separate grant of power, and shall in no wise supersede existing provisions of law for raising revenue for the support of schools, whether under general or special laws, but the powers here given may also be exercised concurrently with other powers and to provide a greater revenue for the schools within such city, limitations of power under existing laws notwithstanding."

If this extra mill and a half are not to be levied in each city in the same manner as the other portion of the school tax in that city, then no machinery for levying it has been provided at all, no person, board, or legislative body has been designated to determine whether all or any part of such mill and a half should be levied in each or any year, and the law is inoperative for the want of means

to carry it out. But if, in order to prevent the law from being inoperative, it should be held that the mill and a half should be levied and collected in the same manner as the other portion of the tax is levied and collected, then we have arrived at the place from which we started, and the law is no better because certain things necessary to make it operative are implied than it would be if these things were plainly expressed. Under these circumstances, the declarations of section 2, above quoted, become idle and meaningless.

Speaking for myself alone, I will say that I am also of the opinion that said chapter 40 is special legislation, and repugnant to both of these sections. In order to ascertain the maximum limit for St. Paul, it is necessary to refer to the special law regulating the public schools in that city. In order to ascertain the maximum limit for Minneapolis, it is necessary to refer to the special law regulating the public schools in that city. As applied to these two cities, chapter 40 is, in effect, two amendments,—one to each special law,—thereby preserving and perpetuating all the irregularities in the two laws. True, as applied to Duluth, chapter 40 is an amendment to the general school law, but the result of such amendment is a special law applicable to Duluth alone. Then chapter 40 is, in effect, three amendments,—one to each of the three different laws, two of which were special laws before the amendment,—and, as amended, all three are special laws. Perhaps the best proof of this is seen in the want of uniformity in the result. If chapter 40 is held constitutional, the maximum limit in St. Paul is now 4 mills on the dollar, in Minneapolis $5\frac{1}{2}$ mills, and in Duluth either $10\frac{1}{2}$ or $16\frac{1}{2}$ mills. Could a law which so reads be held constitutional? But it is immaterial how the law reads, such is its effect. True, the amendment is uniform; that is, the same size patch has been put on each special law. But such uniformity in the character of the amendment—in the size of the patch—is not the test of whether the result is a general law. Such want of uniformity in the result is clearly repugnant to said section 34 of the constitution, which requires that laws passed by the legislature shall be uniform in their operation throughout the state. Again, if independent machinery, uniform in its operation, had been provided for

levying and collecting the mill and a half in each city, the act would still be void and repugnant to said section 34, because of want of uniformity in the result. The act providing for the mill and a half would still be based on special legislation, and would be nothing more than a series of uniform amendments, or patches uniform in size, placed on each of the diverse and special acts, thereby preserving and perpetuating all the irregularity and diversity that originally existed in the different laws which were so amended.

The order appealed from is reversed, and the case remanded, with directions to dismiss the proceeding.

MITCHELL, J.

While I concur in the result, I am not prepared to assent to the proposition that the act in question is unconstitutional on the ground that it is not uniform in its operation upon all the cities in the class, as respects the maximum of all taxes that may be levied for school purposes. It seems to me that, as respects the amount of tax authorized by the act, it cannot be said to be based on existing special legislation. In that respect the act itself is uniform in its operation. The inequalities in respect to the maximum amount of taxes which may be levied for school purposes in the different cities of the class already exist, by virtue of existing special legislation, and are neither created nor increased by this act. But I cannot get away from the conclusion that the act is, on another ground, repugnant to the constitutional provision which prohibits the legislature from amending, extending or modifying existing special legislation. I am of opinion that the necessary effect, as well as the manifest intent, of the act, is to adopt the diverse provisions of the existing special legislation contained in the various charters of the cities of the class, relating to the levying, certifying, collecting, etc., of taxes for school purposes, or, more briefly stated, it adopts this special legislation for the purpose of carrying the grant of power into effect. And it is immaterial whether the act does this in express terms, as in Alexander v. City of Duluth, 57 Minn. 47, 58 N. W. 866, or by necessary implication.

It is urged by the respondent that authority to a city to do an act is authority to the legislative department of the city, to wit, the city

council, to do the act.   It seems to me that this begs the question, and overlooks the fact that in some cities of the class the board of education is the legislative department of the city as to the levy of school taxes and other school matters.   But even if it be conceded that under this act the tax in every city is to be voted by the city council, irrespective of special provisions of its charter, the fact remains that as to all other and subsequent steps the provisions of the special charter of each city must be resorted to; otherwise, the act would be nugatory and inoperative.

For considerations of public policy or necessity, the upholding of this act may be a result devoutly to be wished for, but this is no reason for disregarding the plain provisions of the constitution. In my judgment, it was mistaken policy to adopt such a sweeping and ironclad constitutional prohibition of special legislation as to cities in a state where they had been organized and governed for so many years under diverse special charters, thus creating a frequent necessity for special and local remedial legislation.   But this was a matter for the people, and not the courts.

COLLINS, J.

I concur in the result reached, but prefer to place my concurrence on the ground adopted by Justice MITCHELL.   I am of the opinion that the "necessary effect" and the "manifest intent" of the act referred to by Justice MITCHELL are made more apparent when we find that, 14 days after the passage and approval of chapter 40, the same legislature passed, and the governor approved, another act (Laws 1899, c. 77), which is an exact duplicate, except that in section 1 the words "school districts" were substituted for "cities," and the word "district" for "city."   The intention was to adopt the diverse provisions of existing special legislation found in city charters, whether taxes for school purposes were levied and certified by city councils, or by boards of education independent of councils.

START, C. J. (dissenting).

I dissent.   The objections urged against the constitutionality of Laws 1899, c. 40, rest, it seems to me, upon the untenable assumption that it is based upon existing special laws, and requires for its enforcement their aid.   The act grants to all cities of a given class

the power to raise annually by taxation an amount, in addition to that authorized by existing laws, not exceeding a mill and one-half on each dollar on the assessed valuation of the taxable property of such cities, for school purposes, and to appropriate it therefor.

It is urged that it is special legislation, and therefore unconstitutional, because, in order to ascertain the maximum limit of taxation for school purposes for any city of the class, it is necessary to refer to the special law regulating the public schools in such city, and that it, in effect, amends the charter of each city by increasing the maximum limit of taxation for school purposes. But why is it necessary to ascertain such maximum limit in order to levy this particular tax? There is nothing in the act requiring it, or that increases or diminishes the powers of the cities under their respective charters. The power granted to each city of the class is to raise an amount equal to a mill and one-half tax in addition to that authorized by existing laws, and without reference to them; hence any maximum limit in existing special laws is immaterial. The power granted to raise by taxation the extra or additional amount is unqualified.

Again, it is urged that, because the maximum limitation of taxation for school purposes in the several charters of the cities is not the same, the operation of the law is not uniform, and its effect is to preserve and perpetuate the evil. How can this be so? The existing differences in the provisions of the respective charters of the cities, resulting in a lack of uniformity, existed before the law in question was enacted. It did not create, nor does it perpetuate, such want of uniformity. If the law be repealed or held to be invalid, the supposed evil of diverse charter provisions continues.

It is also urged that the law is unconstitutional because it necessarily adopts and extends existing special legislation, and that the law cannot be executed without recourse to the diverse provisions of the several city charters. This is the serious and doubtful question in this case, but the doubt must be solved in favor of the act, and, if it is fairly susceptible of two constructions, the one must be adopted which will sustain it. The act here in question may be fairly construed as complete in itself. It is an independent and separate grant of power, and it provides, by necessary implication,

for the execution of the power.    True, it does not in terms designate the officers who are to execute the power, or the mode thereof, but the grant by implication carries with it everything necessary to make it effective, or, as the district court aptly expressed it, "the power to raise by taxation includes the power to levy the tax."

It is suggested, in effect, by the majority of the court, that the act adopts the diverse provisions of the existing special legislation contained in the charters of the cities, for the purpose of carrying the grant of power into effect; that is, it was the intention of the legislature to adopt an abortive method of executing the power, although some five years had then elapsed since the decision of the case of Alexander v. City of Duluth, 57 Minn. 47, 58 N. W. 866, in which it was expressly declared that the adoption of such a method was unconstitutional.    I am unwilling to impute to the lawmaking power such fatuity from the mere fact that the law is silent as to how and by whom the grant is to be executed.    It must be assumed that the legislature intended that the law should be executed in a way that would make its provisions valid, not invalid, and I see no practical difficulty in executing the power granted without invoking the aid of special and diverse charter provisions.

The constitutional amendment forbidding special legislation as to cities recognizes a continuance of their corporate existence under special charters for a limited time, at least, and expressly authorizes the passage of general laws with reference to them, provided such laws are uniform in their operation.    Any general law enacted pursuant to such express provisions of the constitution must of necessity recognize the corporate existence of such cities, although they were created and continue to exist by virtue of special and diverse charters.    Such a law would not be unconstitutional because it by implication adopted so much of the special charters as gave and continued to such cities their corporate existence.    Now, the act in question does not go beyond this.    It recognizes the cities as municipal corporations, and confers upon them, as such, the power to levy this tax.    The execution of this power, in the absence of any express provision in the act, devolves upon the representative body of the corporation,—the common council,—no matter what officer or board may be authorized by their charters to levy

taxes for school purposes. The council must determine the amount to be raised under the act (that is, levy the tax), and certify its action, or cause it to be done by its recording officer, to the county auditor, pursuant to G. S. 1894, § 1557, who must extend the tax. If such be the correct construction of this act, it is not based upon existing special laws, within the prohibition of the constitution, and does not require for its enforcement their aid, and therefore it is constitutional.