STATE ex rel. BOARD OF EDUCATION OF MINNEAPOLIS v. CLEMENT
J. MINOR.

February 19, 1900.

Nos. 11,976—(223).

**Laws 1899, c. 77, Constitutional.**

*Held*: Laws 1899, c. 77, providing for an extra levy of one and one-half mills on the dollar in school districts having 50,000 inhabitants, is constitutional, and not special legislation within the provisions of sections 33 and 34, article 4, of the constitution.

**Same—Additional School Tax.**

As to the amount of tax authorized the act is not based upon special legislation and is therefore uniform in its application.

**Same—Collection not Dependent upon Special Legislation.**

The levy, certification, and collection of the tax do not depend upon the provisions of special legislation, the general statutory provisions being ample for that purpose.

**Same—Recognition of Special Laws.**

The act recognizes and adopts school districts as organized under special laws, but such recognition does not render the act repugnant to the prohibition against amending, extending, or modifying special laws.

Mandamus in the district court for Hennepin county to compel respondent, as county auditor of that county, to extend on the tax rolls for the year 1899 the tax and levy of nine-tenths of one mill on each dollar of the assessed valuation of the taxable property within the city of Minneapolis, amounting to $96,056.25, levied by resolution of the board of education of said city. From a judgment, entered pursuant to the order of Elliott, J., adjudging that a peremptory writ issue, commanding the levy to be extended as prayed, respondent appealed. Affirmed.

*Louis A. Reed*, County Attorney, and *C. S. Jelley*, for appellant.

*Frank Healy*, for respondent.

*Hahn, Belden & Hawley* and *Walter L. Chapin* also filed briefs on behalf of respondent.

LEWIS, J.

Mandamus proceedings to compel the county auditor of Hennepin county to extend upon the tax rolls of said county for the year 1899 the tax and levy of nine-tenths of one mill on each dollar of the assessed valuation, which had been levied by a resolution of the board of education of Minneapolis under and pursuant to Laws 1899, c. 77. The court below granted the motion of relator and ordered a peremptory writ to issue commanding said levy to be extended. Thereupon judgment was entered and the auditor appealed.

The only question involved is the constitutionality of chapter 77, which is attacked upon the ground that it is special legislation. In the case of State ex rel. v. Johnson, 77 Minn. 453, 80 N. W. 620, a similar law was under consideration and by a divided court held to be unconstitutional. In view of the fact that that decision was not the expression of the united court, is of such recent date, and the matter involved being of unusual importance, the construction of the constitutional enactment which has been the source of much legislation and litigation, we have concluded that the decision referred to should not be regarded final upon the doctrine of stare decisis. With all due deference therefore to the learned justices who gave expression to their views in that case, we proceed to a re-examination of the questions there passed upon.

Section 1 of chapter 77 reads as follows:

"School districts now or hereafter having over fifty thousand inhabitants are hereby empowered to raise annually by taxation, independently of and in addition to other sums for school purposes authorized by law, an amount not exceeding one and one-half mills on each dollar of the assessed valuation of taxable property within such district for the purchase of school sites," and other school purposes.

"Sec. 2. This act shall be construed as an independent and sep arate grant of power and shall in no wise supersede existing provisions of law for raising revenue for the support of schools, whether under general or special laws, but the powers here given may also be exercised concurrently with other powers and to provide a greater revenue for the schools within such district, limitations of power under existing laws notwithstanding."

The constitutional provisions in reference to special legislation (Const. art. 4), are, so far as here important, as follows:

Sec. 33. "In all cases when a general law can be made applicable no special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined without regard to any legislative assertion on that subject. The legislature shall pass no local or special law regulating the affairs of, or incorporating, erecting or changing the lines of any county, city, village, township, ward, or school district, * * * regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes * * *. The legislature may repeal any existing special or local law, but shall not amend, extend, or modify any of the same.

Sec. 34. "The legislature shall provide general laws for the transaction of any business that may be prohibited by section one (sec. 33) of this amendment, and all such laws shall be uniform in their operation throughout the state."

We deem the provisions of section 2 of said chapter 77 to constitute an attempt on the part of the legislature, to declare the act to be a general law, and we therefore decline to give this section any consideration. The act must stand or fall independently of such declaration of intent.

As stated in State ex rel. v. Johnson, supra, the cities falling within the class are Minneapolis, St. Paul, and Duluth and, under the special laws in force prior to the passage of chapter 77, the maximum limit of taxation for school purposes in Minneapolis was four mills, in St. Paul two and one-half mills, and in Duluth, under the general laws, fifteen mills on the dollar. Appellant contends that chapter 77 is a special law because it cannot operate uniformly in its application to all the members of this class; that the rate in Minneapolis would be increased to five and one-half mills, in St. Paul to four mills, and in Duluth to sixteen and one-half mills; and in order to ascertain what the maximum rate is in Minneapolis or St. Paul under chapter 77, resort must be had to the special laws governing those cities, and that this is in effect an amendment to said special laws; that the result is a lack of uniformity, and hence fatal under section 34. Again it is contended that, even if the law is uniform in its application to the several

cities, yet it cannot be enforced without adopting the special legislation contained in the various charters relating to levying, certifying, and collecting the tax.

Upon the question of the uniformity of the law as affected by the additional levy of one and one-half mills reference is made to the dissenting opinion of the CHIEF JUSTICE and to the concurring opinion of Justice MITCHELL in State ex rel. v. Johnson, supra, for a discussion of this point, and we adopt the views there expressed on that question.

The majority of the court, when that case was under discussion, adopted the view that the act was repugnant to the constitutional provision which prohibits the legislature from amending, extending, or modifying existing special legislation; that the tax could not be levied and collected without adopting special legislation for the purpose. This view seems to have been based upon the case of Alexander v. City of Duluth, 57 Minn. 47, and the case of Bowe v. City of St. Paul, 70 Minn. 341. While we believe those cases were correctly decided, in our view of this matter they do not control the case before us.

In the Alexander case, Laws 1893, c. 210, was under consideration, and the act provided that in certain cities where tunnels were necessary to connect portions of the city divided by navigable waters, the common council (public interest requiring it) might cause to be constructed such tunnels, and assess the property benefited thereby for three-fourths of the cost, the balance to be a general charge against the city. It was also provided that the proceedings to enforce the assessment and to condemn the necessary property should conform to the proceedings in force in the cities undertaking such improvement. There was no attempt to formulate a general law in this respect. It was held that this was adopting the various special provisions of the cities of the class to enforce the act, and was special legislation, because it was a modification and extension of those special laws. However there are some expressions in the opinion, which are relied on by appellant and urged as applicable here, as follows: "Previous special legislation can never be made the basis of classification, and the legislature cannot touch it, except to repeal it."

In the Bowe case (70 Minn. 344) this language is quoted as applicable:

"It must appear that the act will always, by the force of its own terms, continue to be a general law.  *  *  *  A general law cannot be based on special laws, even though its operation is general when passed, if the legislature, by the future repeal of any or all of the special laws, may render the so-called general law special in its operation and effect."

These are abstract propositions, and cannot be taken as an expression of the law applicable to the case under consideration.

The constitutional amendments were adopted for the purpose of avoiding prolific legislation in reference to the subjects mentioned. Special legislation had become a burden. By proper classification general laws could be made applicable. Judicial interpretation has developed this idea, and the tendency has been, and is, to arrange and divide the subjects under general laws. The different sections referred to must be considered together; each clause be given due weight with reference to the others. Upon such consideration it seems to us that undue weight has been given to the words, "but shall not amend, extend, or modify any of the same." If this part be taken independently of the balance, and strictly construed, then it would follow that the legislature could not touch a special law except to repeal it. But if the provisions of section 34 in reference to the passage of general laws to cover the prohibited subjects be given consideration, it follows that such general laws must deal with such special subjects, taking into account the conditions existing at the time the amendments were adopted. Cities and school districts had been organized, and were then existing under special laws.

Sp. Laws 1878, c. 157, as amended by Sp. Laws 1885, c. 86, establishes the board of education of Minneapolis and authorizes said board to levy annually a tax for school purposes not to exceed four mills on the dollar, and to make return of its annual levy to the county auditor, and all such taxes shall be collected and the payment thereof enforced with and in the same manner as state and county taxes. G. S. 1894, § 1557, provides that the taxes voted by cities, villages, townships, and school districts, shall be certified

by the proper authorities to the county auditor on or before October 10 in each year and, under the general provisions of the general statutes, the tax is collected and the money finally paid over to the county treasurer, and section 1576 provides that the county auditor shall keep account with each school district in the county, and after settlement with the county treasurer shall credit the collections to the proper fund. Section 1577 provides that the county treasurer shall pay over to each school district, on order of the county auditor, all money collected and belonging to the same. So the fact is, that there are existing general provisions of law as to the levy and certifying of the levy to the county auditor, the collection of the tax, and payment of the same to the board of education.

Chapter 77 recognizes the existence of the school district only to confer upon it authority to levy the extra one and one-half mills for school purposes. The provision in Sp. Laws 1878, c. 157, in reference to authority of the board of education to make the levy and certify the levy to the auditor, may be repealed or ignored, and the law remains complete and does not call into effect any express action authorized by the special act. Is this amending, extending, or modifying a special law within the intent of the constitutional amendments? If so, then G. S. 1894, § 1557, is a special law; so are the other general provisions referred to, for the cities and school districts organized under special charters are referred to and adopted in the application of those provisions. If the amendments are to be construed as contended for, then school districts and municipalities organized under special laws are beyond the aid of the legislature. If chapter 77 is unconstitutional, then a general enactment applicable to all school districts in the state would for the same reason be invalid.

There is authority beyond our own state to the effect that a reference to special charters and laws is not the test of special laws. One reference will be sufficient. In the case of Van Ripen v. Mayor, 58 N. J. L. 262, there was before the court an act which provided that the board of aldermen, public works, water commissioners or other board, body, or department of any municipality having the charge or control of water supply, could enter into

an agreement with reference thereto, provided that, in cities having a board of finance and taxation, such contract should be referred to and approved by it. This law was attacked as being special legislation. It was held constitutional. The reference to the various boards created by special charter did not make the act a special law. No dissimilarity is created. All boards are endowed with the same power.

We therefore hold, overruling State ex rel. v. Johnson, that the act in question is constitutional.

Judgment affirmed.

COLLINS, J. (dissenting).

I quite agree with the majority in their assertion that the decision in State ex rel. v. Johnson, 77 Minn. 453, 80 N. W. 620, should not be regarded as final on a question of this importance, and therefore do not place my dissent herein on the principle of stare decisis. I put it squarely on the ground that the act now before us, chapter 77, and the one considered in the Johnson case, chapter 40, indistinguishable in fact, and designed to cover the cities of Minneapolis and Duluth (each being incorporated as an independent district, with a distinct name and a governing body wholly disconnected from the municipal government), and the city of St. Paul (which is a district in itself with school inspectors appointed by the mayor and in all financial matters merely advisory to the common council), were actually intended to be and are nothing more than evasions of the constitutional provisions in respect to special legislation. I need not repeat what was said in the Johnson case in support of this position by the three members of the court, as it was then constituted, who agreed on this point. The views therein expressed will, I believe, commend themselves to those, in and out of the legal profession, who believe that the voice of the people as enunciated in article 4, § 33, as amended in 1892, should, if disobeyed by the legislature, be observed and respected by the courts.

The history of this amendment is not without its lesson. After a struggle in the legislature which lasted through three separate sessions, there was adopted, in 1881, the first amendment prohib-

itive of special legislation on certain specified subjects, and providing for the enactment of general laws for the transaction of prohibited business. Experience with the legislature soon demonstrated to the people that there was no hope for relief in the enactment of general laws which would bring about the desired uniformity in the various statutes under which public and private corporations were acting, and public, as well as private, business was being transacted, and, after much agitation, the very radical amendment of 1892 was submitted to the people and adopted by a majority, which clearly, and perhaps unfortunately, indicated that the people were hostile to legislation special in its nature, no matter what the form might be. Since that time attempts have been made, again and again, by appointed and self-constituted committees and commissioners from cities and school districts, large and small, in this state, to "get together" on general legislation, but without avail. If the legislation now under consideration be sustained there need be no further effort made in this direction, for all that is needed to amend every act incorporating a city or a school district is a basis for classification. We shall hear no more of efforts to place all cities and school districts heretofore acting under special legislation, with as many different provisions as there are cities and districts, under a general and uniform system. The result will be more agitation among the taxpayers, further legislation and more radical constitutional provisions.

A glance at the history of special legislation affecting the three school districts more particularly interested in the 1899 act, will show how strenuously and earnestly the citizens therein have been compelled to insist upon legislation which would restrain officials in the expenditure of public funds, and thus reduce taxation. Their success has been temporary only, because of the determination of these officials to have more money and the disposition of the courts to favor a statute in order to hold it constitutional.

If I understand the prominent and controlling feature of the majority opinion, it is that the provisions in the special act, under which the schools in the city of Minneapolis are governed, having reference to the mode of reporting, or certifying, the levy of taxes

for school purposes, may be repealed, or may be ignored by the county auditor, and yet Laws 1899, c. 70, will remain complete, not requiring any express action authorized by such special act. In other words, independently of this special act, there are adequate existing provisions of the general tax law, as to the "certifying of the levy to the county auditor, the collection of the tax, and payment of the same to the board of education." Substitute the words "city treasurer" for the words "board of education," and the quoted paragraph applies with equal force and relevancy to the St. Paul special act. The provisions of the general tax law referred to are G. S. 1894, §§ 1557, 1576, and 1577, we are informed. The provisions found in the two sections last mentioned have always governed, and no special act has attempted to regulate the manner of keeping accounts in the county auditor's office, or the time when the county treasurer should pay over funds collected for school purposes, and never will. But section 1557 expressly provides that the taxes voted by incorporated cities, villages, townships, and school districts should be certified to the county auditor by the proper authorities on or before October 10 in each year. Unless certified by the proper authorities an auditor would not, and legally could not, make the levy. How would the auditor of Ramsey county, or the auditor of Hennepin county, satisfy himself that the amount of tax alleged to have been voted for school purposes in the St. Paul district, or in the Minneapolis district, had been voted by an authorized body, or had been certified up to him by the proper authorities? In no manner and nowhere except in the special acts of incorporation. In the St. Paul act the matter of school finances and the voting of taxes for school purposes are the exclusive prerogative of the common council of the city, and the amount so voted is certified to the auditor of Ramsey county by the city clerk, presumably, on or before October 10, in the absence of a special provision to the contrary, the sum so voted not to exceed the amount which may be realized by a levy of two and one-half mills on the dollar. Under the Minneapolis act school taxes are voted by the board of education, the maximum levy being four mills on the dollar, and the amount thereof is to be certified or returned to the auditor by the board on or before the first

79 M.—14

of November. So that the general provision, section 1557, which is relied upon to save the 1899 legislation, amounts to nothing more, even if it amounts to that, than to fix October 10 as the last day upon which the board of education of the Minneapolis district may report or certify to the county auditor its action under chapter 77. And, singular as it may appear, this board may again, under the special law and under the court's construction of chapter 77, make another report and certificate to the auditor, not later than November 1. Again when the treasurers of those counties are required under the general law to pay over the moneys in their hands, .collected for these districts, to whom must they pay, and how are they advised on the subject? In no other manner than by an examination of the special acts. Payment in the St. Paul district is made to the city treasurer, while it is made to the treasurer of the board of education in the Minneapolis district. It seems to me that express action authorized by the special acts, and nowhere else to be found, is required in order to carry out the provisions of the laws of 1899, and that without setting in motion the machinery therein, and in no other law provided, the extra tax cannot be voted, certified, levied, collected, or paid over to the proper officer. The fact is that in the case now before us, as well as in the Johnson case, particular care was taken to follow the very different provisions of the special acts under which the two school districts are operating. I am of the opinion that this case, as was that of State ex rel. v. Johnson, is controlled by what was said in Alexander v. City of Duluth, 57 Minn. 47, and that opinion was largely rested upon Fitzgerald v. New Brunswick, 47 N. J. L. 481.

I might go further in pointing out the necessity of relying on the special laws whenever an attempt is made to vote, levy, and collect this extra tax, but this dissent is already too lengthy. I believe these enactments of 1899 to be opposed to the constitutional provisions, and that belief compels me to state my views in opposition to those of my associates.