STATE ex rel. MINNESOTA LOAN & TRUST COMPANY and Others v.
A. A. AMES.[1]

June 27, 1902.

Nos. 13,050—(171).

### Issue of Municipal Bonds—Laws 1901, c. 134.

On review of mandamus proceedings to compel the mayor of the city of Minneapolis to sign bonds of the city to provide funds in anticipation of local improvements, it is *held* that Laws 1901, c. 134, is valid, and not in conflict with Const. art. 4, §§ 33, 34, but should be sustained under the amendment adopted in 1898, which became section 36 of such article (Laws 1899, p. v).

### Revolving Fund for Local Improvements.

Alexander v. City of Duluth, 77 Minn. 445, followed, and *held*, that the law sustained in that case is not materially distinguishable from Laws 1901, c. 134, authorizing cities of a certain class to issue bonds for $150,000 to create a permanent "revolving fund" for local improvements, upon the ground that the latter act is also remedial in character, although the fund providing for the obligations of the city was to pay for improvements which had not been made at the time when the bonds could issue under its terms.

Alternative writ of mandamus issued out of the district court for Hennepin county on the relation of Minnesota Loan & Trust Company, and others, to compel A. A. Ames, as mayor of the city of Minneapolis, to sign certain municipal bonds authorized by the city council. From a judgment entered pursuant to an order, Elliott, J., directing the issue of a peremptory writ, defendant appealed. Affirmed.

*Hall & Kolliner* and *Welch, Hayne & Hubachek*, for appellant.

*Edward M. Johnson*, for respondents.

LOVELY, J.

Appeal from a judgment in a mandamus proceeding to compel the mayor of the city of Minneapolis to sign bonds of the city for $150,000.

Laws 1901, c. 134, substantially provides that the council of each

1 Reported in 91 N. W. 18.

and every city of this state now or hereafter having fifty thousand inhabitants may, upon certain conditions and prerequisites to be complied with, issue its bonds for the purpose of anticipating local improvements where special assessments are to be made upon the property benefited; the bonds to be sold, their proceeds placed in the city treasury to constitute a special fund to be used for the purpose of paying assessments levied for paving or repairing public streets, lanes, or alleys, gutters, constructing curbstones, and extending sewer pipes through any street or public ground, and not to be used for any other purpose. And further provides that "no bonds shall be issued under the provisions of this act after the expiration of six months from the time of the approval of this act." Such proceedings were pursued in compliance with this law by the city council of Minneapolis in the issuance of its obligations for $150,000 that it became the duty of the mayor to sign its bonds for that amount unless his refusal can be justified upon the ground that the council had no legal right to incur this liability for the city because the law authorizing the same is in violation of sections 33, 34, article 4, of the state constitution, inhibiting special legislation. Hence the only question for our determination here is whether this statute is valid, and we are of the opinion that under the previous decisions of this court this question must be answered in the affirmative.

Under the last amendment to the state constitution upon the subject of special legislation in cities (article 4, § 36; Laws 1899, p. v), it is provided that

"The legislature may provide general laws relating to affairs of cities, the application of which may be limited to cities of over fifty thousand inhabitants, or to cities of fifty and not less than twenty thousand inhabitants, or to cities of twenty and not less than ten thousand inhabitants, or to cities of ten thousand inhabitants or less, which shall apply equally to all such cities of either class."

In a recent decision of this court upon an act very similar to chapter 134, here questioned, it was held that this last amendment to the constitution "authorizes the legislature to classify for the purpose of general legislation cities on the basis of population

therein specified, although such basis would not have previously been germane to the purpose or subject-matter of the proposed law, but that otherwise the provisions of sections 33 and 34, of article 4, are not affected by the amendment." Alexander v. City of Duluth, 77 Minn. 445, 448, 80 N. W. 623. The only distinction which we consider material to notice between chapter 134, supra, and the act passed upon in Alexander v. City of Duluth, supra, is suggested in that opinion, and is that the temporary law should be remedial, which was the undoubted nature of the statute there considered.

The act here under review authorized a special fund to provide for local assessments to be levied in the future and available for the period of six months only after its passage. The improvements to be paid for by such fund had not actually been made when the statute was enacted, and it is urged that, inasmuch as the act was temporary, it was not remedial, because the improvements were not already provided for, hence distinguishable from the law considered in Alexander v. City of Duluth, supra; but the beneficial character of a statute must be determined by necessities existing at the time of its enactment, and is largely dependent upon a knowledge of conditions requiring it by the lawmaking body, which the courts must recognize in construing the law upon broad views of what was within legislative policy and wisdom in considering the welfare of the class of municipalities upon which it seeks to bestow benefits of a public nature. This law does not, in our view, contemplate the taking of property without due process of law, nor the application of the taxing power for private purposes. We must recognize the obvious necessity of public improvements of a local character in cities, and that they may be of general utility, although of such private benefit as to justify local assessments to pay for their construction and maintenance under section 1, article 9, of the constitution. It seems also obvious upon reasonable views of municipal government that it may be of benefit to make such improvement expeditiously, and without the delay incurred by waiting for the collection of assessments upon property benefited, which may run through a term of years, and that it also may be wise to anticipate the payment of such assessments

by raising the means to defray the cost of the same in advance of its collection upon the abutting property which is to be improved; also that such relief should not be a perpetual source of revenue for that purpose, but only to meet existing exigencies.

No individual is granted any special privilege by this act. The public, through the use of the money derived from the bonds, gets the benefit of the improvement at once. Private property owners must repay the city for such improvements which are made for the public good, and the purpose of the act in this respect is no different in character than the construction of waterworks by a municipality to be thereafter paid for by the adjacent property owners and consumers. At this time no one could reasonably raise the question that municipal obligations would not be authorized by legislative authority to pay for the same. It would seem to follow that a law otherwise valid, though providing within a limited time only for the issuance of bonds to anticipate public improvements might be of great utility to cities of the class provided for, and it is not easy to see either why the legislature having such necessity in view, of which it is the paramount judge, might not provide for such exigencies. Hence, while it does not appear that the improvements had been made which were to be anticipated by the bonds, we cannot regard this as a crucial test of the remedial nature of the statute, for the constitutionality of an act is to be determined by its own essential character, in connection with such limitations as are found in the constitution, instead of local facts or conditions; otherwise it might trench upon the constitutional inhibitions against special legislation. It must be presumed that the legislature took into consideration the particular conditions and necessities for local improvements existing in cities within the class provided for by the act, and intended to create a permanent "revolving fund" to meet them. Of these facts the courts, as well as the legislature, must take notice (State v. Stearns, 72 Minn. 200, 219, 75 N. W. 210), and to that extent, and for such purposes, the law must be held remedial.

Neither do we consider it important to consider on this review the question whether the application of the funds thus raised may be based upon the provisions of special laws previously enacted for

the government of such cities, for this objection is premature at this time; no action having as yet been taken upon the provisions of this act under any special laws. In re Piedmont Ave., 59 Minn. 522, 61 N. W. 678.

This case has been exhaustively discussed in the able briefs of counsel, and if we have not noticed more at length all questions presented therein they have been attentively considered in the conclusions we have reached that it was the duty of the mayor to effectuate the acts of the city council.

Judgment affirmed.