### J. J. LE TOURNEAU v. T. W. HUGO and Others.[1]

November 6, 1903.

Nos. 13,767—(211).

**Special Legislation—Bridge Act.**

Chapter 75, p. 79, Laws 1901, authorizing cities having a population of more than fifty thousand to issue the bonds of the city to construct a bridge over a navigable canal within its limits, is not unconstitutional as special legislation. The act applies to all cities of the state having the designated population, and the presence of a navigable canal is not an element of the classification. Such classification is authorized by section 36, article 4, of the Constitution.

**Municipal Corporation Contract.**

Diamond v. City of Mankato, 89 Minn. 48, to the effect that the municipal authorities can enter into such contracts only, where they are required by law to let the same to the lowest bidder, as correspond substantially with the plans and specifications upon which bids were invited, followed and applied. Any substantial and material departure from such specifications in the contract proposed to be entered into with the lowest bidder will render the same void, and that, too, notwithstanding the fact that it affirmatively appears that but one bid was presented for the work.

**Injunction.**

In such case the municipal authorities may be enjoined at the suit of a taxpayer from entering into a contract so proposed to be modified and

[1] Reported in 97 N. W. 115.

changed, and it is not necessary for him to allege or prove fraud or collusion, or that contractors were in any way deterred from bidding by reason of the terms prescribed by the specifications, or that fair competition was in any manner prevented.

**City of Duluth.**

The general provisions of the charter of the city of Duluth, requiring all public work to be let to the lowest bidder, apply to the bridge authorized to be constructed by Laws 1901, p. 79 (c. 75).

Appeal by plaintiff from an order of the district court for St. Louis county, Dibell, J., overruling a general demurrer to the complaint. Reversed.

*Adams & Miller,* for appellant.

*Oscar Mitchell,* for respondents.

BROWN, J.

Action by a taxpayer to restrain and enjoin the city of Duluth from issuing the bonds of the city for the construction of a bridge over the ship canal situated therein, and from entering into the contract mentioned in the complaint for the construction of the same. A general demurrer was interposed to the complaint, which was sustained by the court below, and plaintiff appealed.

Two questions are presented for consideration in this court: (1) Whether Laws 1901 (c. 75) p. 79, under which the city proposes to issue the bonds in question is constitutional and valid; and (2) whether certain changes in the terms and provisions of the contract mentioned in the complaint from the terms and provisions of the plans and specifications made a basis of the invitation for bidders, and on which the contract is founded, are of such a substantial nature as to render the contract, if entered into, void. These are the only questions presented by the record, and we consider them in the order stated.

1. The act of the Legislature referred to, so far as here pertinent, provides as follows:

"Any city in the state of Minnesota, at any time having a population of more than fifty thousand according to the last officially promulgated state or national census is hereby authorized and empowered to construct a bridge across any navigable canal in such city."

The objection to this statute is that it adopts an erroneous classification, in this: that it is made to apply to cities of the population designated having a navigable canal. It is claimed that there is but one city in Minnesota where such a canal exists, and that it is therefore clear that the legislature intended it to apply only to the city of Duluth; consequently that it is special legislation, and void.

We do not concur in this contention. The question as to the validity of such statutes has often been before this court, and the test as to their constitutionality, when not applied to the affairs of cities, and based exclusively upon the population classification, has been variously stated. In Hetland v. Board of Co. Commrs. of Norman Co., 89 Minn. 492, 95 N. W. 305, it was said that the basis of classification for legislation of this kind cannot be arbitrary or elusive, but must be founded upon such a substantial distinction, having reference to the subject-matter of the legislation, between the objects and places embraced therein, and the objects and places excluded, as suggests the necessity or propriety of different legislation for the two; and, further, such legislation must include and act uniformly upon all of a designated class—i. e., all whose condition and wants render such legislation equally appropriate to them as a class. Substantially the same thing was said in Murray v. Board of Co. Commrs. of Ramsey Co., 81 Minn. 359, 84 N. W. 103, and also in State v. Cooley, 56 Minn. 540, 58 N. W. 150. Those cases involved statutes concerning the affairs of counties, while the act under consideration relates to the affairs of cities, and rests wholly upon a population classification. Such a classification is not authorized as to counties, but is expressly provided for as to cities by section 36, article 4, of the state Constitution. This amendment to the Constitution, adopted in 1898 (Laws 1899, p. vi), provides as follows:

> "The Legislature may provide general laws relating to affairs of cities, the application of which may be limited to cities of over fifty thousand inhabitants, or to cities of fifty and not less than twenty thousand inhabitants, or to cities of twenty and not less than ten thousand inhabitants, or to cities of ten thousand inhabitants or less, which shall apply equally to all such cities of either class."

As said in Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623: "It is manifest that the purpose of this amendment was not practically to repeal sections 33 and 34 of article 4 of the Constitution, as to cities which might be classified pursuant to its provisions, but that its object was to enable the Legislature to make population a basis of classification, although there might not be any natural relation between the subject-matter of the proposed law and the number of people in the classified cities. We accordingly hold that the amendment authorizes the Legislature to classify, for the purpose of general legislation, cities on the basis of population therein specified, although such basis would not have previously been germane to the purpose or subject-matter of the proposed law."

Following that decision, and the plain language of the constitution, it must be held that the classification of cities for the purpose of legislation concerning their affairs is permissible on the basis of population alone; and, when a statute conferring special power and authority upon cities concerning their affairs contains no other element of classification, the rule for determining its constitutionality laid down in State v. Cooley and Murray v. Board of Co. Commrs. of Ramsey Co., supra, does not apply. If the subject-matter of the statute concerns the affairs of cities of the class designated therein, the classification by population alone is authorized by this section of the constitution. Alexander v. City of Duluth, supra, was followed in this respect in State v. Ames, 87 Minn. 23, 91 N. W. 18. But in both those cases the statutes there under consideration contained elements of classification in addition to population, and as to such additional elements the general rule in respect to such legislation was applied. The reason for the adoption of this amendment to the constitution is found in the fact that the conditions and necessities of cities of different population require in numerous instances power and authority which could not well be granted to all the cities of the state alike. The larger cities, being surrounded with conditions and circumstances differing from those of the smaller places, often find it necessary to issue bonds for various purposes, and in large amounts, and it would not do to extend the power to create unlimited indebtedness to cities of smaller population; hence the authority to classify cities by population for the purposes of legislation concerning their affairs. The act under consideration

adopts a population classification exclusively. It provides that any city of the state of Minnesota at any time having a population of more than fifty thousand is authorized and empowered to construct a bridge over any navigable canal in said city. The act is made to apply to all cities having at any time a population of fifty thousand, and not to cities having a navigable canal. The canal is in no sense an element of the classification, the operation of the act being limited exclusively to cities of the designated population.

2. Under this act the municipal authorities of defendant city determined to issue the bonds of the city for the purpose of constructing a bridge over the ship canal located therein, and for the purpose of entering into a contract with some person or company for the construction of the same duly advertised for and invited bids upon the work. Plans and specifications were made, as is usual in such cases, which contained various provisions and conditions to be performed and kept by the person obtaining the contract. Among such provisions were the following:

> "In the event of failure to complete the work at the time specified liquidated damages at the rate of thirty dollars per day shall be paid by the contractor to the city for each and every day that any portion of the work remains unfinished after such date." And: "After the work is fully completed the contractor must operate the bridge at his own expense for the period of three months. * * * Should the proper officers of the city be not satisfied at the end of the period of operation above specified, that the bridge is safe and practicable, then the contractor shall, on demand of the city, operate the bridge for a further period of three months." Further: "If at the conclusion of either of the operating periods above provided for the bridge shall have been found by the city authorities to have been constructed in accordance with the contract, payment therefor shall be made."

The first provision just quoted is proposed to be modified by the contract to be entered into with the successful bidder by adding thereto a clause relieving the contractor from the penalty in case delay in the completion of the work is caused by some act not under his control.

And the other provision is proposed to be modified by providing for a thirty-days trial test and the payment of $75,000 of the contract price at the end of that period if the bridge then works satisfactorily, retaining the balance of the contract price and taking a bond from the contractor for the further trial period. Other changes and modifications are set forth in the complaint and discussed in the briefs of counsel, but a careful examination of the proposed contract satisfies us that in all respects, save those two just mentioned, it is as favorable to the city as the provisions called for by the plans and specifications. But in the two respects mentioned substantial rights of the city are relinquished, and the question presented is whether they constitute a variance, within the meaning of Diamond v. City of Mankato, 89 Minn. 48, 93 N. W. 911. It was there held that, where municipal authorities can let a contract for public work only to the lowest bidder, the specifications prepared as a basis for bids must be so framed as to secure fair competition upon even terms to all persons, and any contract entered into with the best bidder, containing substantial provisions beneficial to him, which were not included in the specifications, is void, for it is not the contract offered to the lowest bidder by the specifications; in other words, the contract which the authorities actually enter into in such cases must correspond substantially with the terms and provisions of the specifications upon which bids were invited, and a material departure therefrom will render the contract void.

Following that decision, it is clear that the provisions found in the specifications in the case under consideration which are intended to be omitted from the contract are of a substantial nature, and deprive the city of valuable rights. The provision of the contract fixing a penalty for the failure of the contractor to complete the work within the time agreed upon was intended to secure the city against unnecessary delays in carrying forward and completing the work, and the proposed change in effect relieves the contractor from such penalty, and he thereby obtains a substantial benefit not offered by the original specifications. He is relieved from the penalty thus imposed in all cases where he may be said to be not responsible for a delay in the work. A substantial benefit also accrues to the contractor from the proposed change in respect to the trial test. and, within the Mankato case, is such a departure from the specifications as to render the contract, if entered

into, void; and the public authorities may, at the suit of a taxpayer, be restrained and enjoined from entering into the same.

It is true that the complaint alleges that there was but one bid offered for the construction of this bridge, and it is also true that there is no allegation in the complaint, or even suggestion, of fraud, or that by reason of the proposed changes fair competition was in any way prevented or interfered with, or that contractors were deterred from bidding by reason of such conditions. But a majority of the court (the writer dissenting) hold that those facts are immaterial, and the decision is placed upon the distinct ground and strict rule that municipal authorities can make and enter into such contracts only, where they are required by law to let the same to the lowest bidder, as correspond substantially to the terms and specifications upon which bids were invited.

The opinion of the writer is that modifications and changes of the nature of those here involved are mere matters of detail, and clearly within the discretionary powers of the municipal authorities to retain as a part of the contract, relinquish, or change and modify, as they may deem for the best; and that this decision is an unnecessary extension of the strict rule laid down in the Mankato case. But a majority of the court hold that the case comes fairly within the decision in that case, and that the demurrer to the complaint should have been overruled.

But it is insisted by counsel for the city that the municipal authorities were not required, under the statute authorizing the construction of this particular bridge, to let the contract therefor to the lowest bidder. We do not sustain this contention. While the statute referred to does not in terms require the contract to be let to the lowest bidder, the general provisions of the municipal charter expressly require that all public work of the city shall be let to the lowest bidder, and those provisions control the contract involved in this case. It is true that, if some third person should construct a bridge across the canal, and then offer to sell the same to the city—a condition provided for by the statute—bids could not very well be advertised for or received. The city would be required either to purchase the bridge as constructed or decline to do so. But in the case at bar there was no such condition of affairs presented. Here the city in fact proposed to let the contract

for the construction of the bridge, not to purchase one already constructed, and the provisions of the city charter in respect to letting public work to the lowest bidder must be complied with.

It follows that the order appealed from must be reversed.