STATE ex rel. BOARD OF EDUCATION OF CITY OF MINNEAPOLIS
and Another v. DAN C. BROWN.[1]

March 9, 1906.

Nos. 14,693—(235).

**School-Bond Act.**

Chapters 76 and 77, pp. 93, 94, Laws 1905, legalizing school bonds here-
tofore voted upon by cities for high school and graded school houses, un-
der the provisions of chapter 204, p. 333, Laws 1893, and acts amendatory
thereto, are curative acts, and are not special legislation in conflict with
sections 33 and 34 of article 4 of the constitution of the state.

Appeal by defendant as city comptroller of the city of Minneapolis
from a judgment of the district court for Hennepin county entered
pursuant to the order of Brooks, J., directing the issue of a peremptory
writ of mandamus requiring defendant comptroller to sign and affix the
seal of the city to certain bonds authorized for school purposes. Af-
firmed.

*Frank Healy,* for appellant.
*Belden, Hawley & Jamison,* for respondents.

ELLIOTT, J.

The city of Minneapolis, pursuant to chapter 204, p. 333, Laws 1893,
as amended by chapter 128, p. 281, Laws 1895, submitted to the voters
at the general election in November, 1904, two propositions, one for
the issuance of $100,000 of school bonds for graded school buildings
and additions to graded school buildings, and the other for the issuance
of $100,000 of bonds for high school buildings and additions to high
school buildings. Neither proposition received a two-thirds majority
of all the legal voters present and voting at the election, as required by
chapter 204, p. 333, Laws 1893. State v. Hugo, 84 Minn. 81, 86 N.
W. 784. In 1905 the legislature passed two acts known as chapters
76 and 77, pp. 93, 94, of the Laws of 1905. One of these statutes pro-
vided in effect that all bonds theretofore voted by any city for graded
school buildings and additions to graded school houses, and the other

[1]Reported in 106 N. W. 477.

that all bonds theretofore voted upon by any city for any high school buildings and additions to high school houses, under and pursuant to chapter 204, p. 333, Laws 1893, and the amendments thereto, should be, when issued and sold, legal obligations of such cities, provided the proposition to issue said bonds received a two-thirds majority of all the votes cast upon the respective propositions. The city proceeded to issue the bonds in question under the authority of these acts, but the city comptroller refused to sign the bonds, and application was made to the district court for the issuance of a writ of peremptory mandamus. The writ issued, and from the judgment entered thereon this appeal is taken.

The appeal presents the single question of the constitutionality of chapters 76 and 77, pp. 93, 94, Laws 1905. The proposition to issue the bonds to raise money for the construction of necessary school buildings was submitted to the voters in the city of Minneapolis at the general election in November, 1904. While it received more than two-thirds of the votes of all who voted upon the proposition to issue the bonds, the aggregate vote in its favor did not amount to two-thirds of the number of those who voted at the election. But the legislature of 1905, influenced undoubtedly by the fact that the wishes of the people of Minneapolis had been clearly expressed in favor of the issuance of the bonds, and with full knowledge of the conditions which rendered the issue of such bonds desirable and necessary, removed the restriction imposed by the act of 1903, and legalized and authorized the issue of the bonds without compliance with one of the conditions imposed by the original enabling statute. Chapter 76, p. 93, Laws 1905, is entitled:

> An act legalizing school bonds heretofore voted upon by cities for graded school buildings and additions to graded school houses under the provisions of chapter 204 of the General Laws of the state of Minnesota for the year 1893 and acts amendatory thereof.

Section 1 of the act provided

> That all school bonds heretofore voted upon by any city for graded school buildings and additions to graded school

houses, under or pursuant to the provisions of chapter 204 of the General Laws of the state of Minnesota for the year one thousand eight hundred and ninety-three (1893), as amended by chapter 128 of the General Laws of the state of Minnesota for the year one thousand eight hundred and ninety-five (1895), and other acts amendatory thereof, are hereby declared to be, when issued and sold, legal and binding obligations of said city; providing that the proposition to issue said bonds received a two-thirds majority of all votes cast upon the proposition to issue said bonds at the election when said proposition was voted upon; and provided further that all other requirements of law have been fully complied with.

Chapter 77, p. 94, is in the same language, except that it purports to legalize bonds theretofore voted upon for high school buildings and additions to high school houses.

It is now contended that both chapters 76 and 77 are special legislation and invalid under sections 33 and 34 of article 4 of the constitution of the state, because the classification upon which they rest is arbitrary, illusive, and restrictive. More specifically it is contended that the acts are special because: (a) They do not include bonds of all kinds, one being limited to high school bonds and the other to graded school bonds; (b) they are limited to those cities wherein at the election a two-thirds majority of the votes of those voting upon the proposition was obtained in favor of the issuance of the bonds; and (c) they classify cities that have voted for the issuance of bonds under the 1893 law as amended.

Neither upon principle nor precedent should these statutes be treated as special legislation. They are remedial, curative acts, and apply to all subjects of legislation which are within the conditions and subject to the evils sought to be remedied. They resemble statutes which cure and make valid all deeds which were defectively executed or acknowledged. The matters classified by these acts are improperly and defectively authorized school bonds, and the acts apply to all bonds of the kind which come within the conditions. The two statutes might possibly have been as well consolidated into one, but the general policy

of the state has been to keep high schools and graded schools in different classes for legislative purposes. We treat them as one statute.

The legislature had imposed extremely onerous and impracticable conditions upon the issue of such bonds, and unsuccessful attempts had been made to comply with the conditions. A vote had been taken upon school bonds only, and more than two-thirds of the voters who were intelligent enough to be interested had voted for the bonds. The whole matter was under the control of the legislature, and bonds could only be issued by its authority and upon the terms by it prescribed. It could impose or waive conditions; it could ratify what it could at the time authorize. In 1905 it had the power to authorize the issue of school bonds upon a two-thirds vote or a mere majority vote of those who voted upon the proposition. The only limitation in this respect was upon the manner of legislative action. It appeared to the legislature that the conditions were such as to require remedial legislation, and we are satisfied that the statutes enacted by it for this purpose are not in violation of the constitutional prohibitions. The only serious question is whether the basis of classification is proper and reasonable.

1. The subject of special legislation has been so frequently before the court since the adoption of the several constitutional amendments that the principles by which acts of the legislature of this character are tested should be fairly well recognized and understood. In considering the constitutionality of such statutes it is necessary to bear in mind the established rule that every statute enacted by the legislature of the state is presumed to be the result of the exercise of its constitutional right to enact legislation. Every presumption is in favor of the constitutionality of a regularly enacted statute, and the courts will hold a statute unconstitutional only when satisfied after the most careful consideration that it is in conflict with some provision of the state or national constitution which is binding upon the legislature and courts alike. We must also remember the purposes for which the constitutional amendments were adopted, and construe them and the statutes enacted thereunder in the light of these purposes and the evils which it was sought to remedy. Special and local legislation in many states had become an efficient means for the easy enactment of laws for the advancement of personal rather than public interests. State v. Village

of Cloquet, 52 Minn. 9, 53 N. W. 1016; Maize v. State, 4 Ind. 342; Morrison v. Bachert, 112 Pa. St. 322, 5 Atl. 739; Ayars v. Westfield, 122 Pa. St. 266, 16 Atl. 356, 2 L. R. A. 577; and Mr. Binney's article in 32 Am. Law Reg. 613. It encouraged the reprehensible practice of trading and "logrolling," and induced members to become indifferent to legislation which in the aggregate was detrimental to the commonwealth in order to secure the assistance of other members in the enactment of laws in which their personal local constituencies alone were concerned.

The extent of such legislation was so great that the people finally adopted the various amendments to the constitution which prohibit special legislation in certain cases, but it is fair to assume that they did not intend to put a straight jacket upon a growing young commonwealth. As said by a learned and discriminating writer: "While the absence of all restriction upon special and local legislation is unquestionably a serious evil, yet the absolute or nearly absolute prohibition produces in its turn results which are far from satisfactory. That this is inevitable is clear from the fact that such legislation, when properly regulated and employed, is not only a perfectly legitimate exercise of legislative power, but is a valuable means of providing for the needs of the different parts of a state, and even of corporations or individuals under exceptional circumstances. There is nothing essentially wrong in the thing itself. It is perfectly natural and fitting that some legislation should be of this character, and what it needs is to be adequately regulated, as is done in England, so as to secure its proper use while preventing its abuse." 32 Am. Law Reg. 622. Reasonable restraint upon the manner of legislative action only was intended. It could not have been the purpose to deprive the legislature absolutely of the power to legislate upon any subject-matter which required legislation. An extremely strict construction would have led to this result. To avoid this it was necessary to classify the subject-matter of legislation, and this was done upon principles which had been developed and established by the courts in dealing with the general subject of class legislation. For illustrations, see Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249, 41 N. W. 974; Johnson v. St. Paul & D. R. Co., 43 Minn. 222, 45 N. W. 156, 8 L. R. A. 419.

Classification is primarily a matter for the legislature, and, like other matters of a legislative character, should be controlled by the courts only when it is very apparent that the legislature has abused its discretion in this respect and violated some provision of the constitution. Naturally, the somewhat drastic constitutional amendment which placed a sudden check upon the common practice of enacting special laws led to the passage of some acts which were manifest attempts to evade the constitution. This court has never hesitated to hold such statutes unconstitutional, but it has always recognized the fact that all statutes are entitled to a presumption in favor of their constitutionality.

Thus, in State v. Ritt, 76 Minn. 531, 536, 79 N. W. 535, 537, Justice Mitchell said: "It is also urged that the legislature must be allowed a large discretion in the matter of classification by population. This is true, but all that this means is that a classification of municipalities by population, in statutes relating to their structure, machinery, and powers, is legitimate where population bears a reasonable relation to the subject of the legislation; and, classification in such cases being committed to the judgment of the legislature, its judgment should prevail, unless the classification be manifestly arbitrary, illusory, or applied for the purpose of evading the provisions of the constitution." So, in State v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L. R. A. 297, 89 Am. St. Rep. 571, Chief Justice Start said: "Courts ought never to be unmindful of the fact that the lawmaking power is vested in the legislature. Therefore, if there be any facts fairly calling for the exercise of legislative discretion in the classification of particular subdivisions of the state for the purposes of legislation, courts cannot review such discretion, and declare statutes making such classifications invalid, simply because they differ with the legislature as to the propriety of the classification. It is only when the classification is so manifestly arbitrary as to evince a legislative purpose of evading the provisions of the constitution that the courts may and must declare the classification unconstitutional."

2. The general principles which underlie and control the theory of permissible classification are now well settled in this state. The basis of classification must not be arbitrary or illusory. Having reference to the particular legislation, there must be some substantial distinction

which suggests a reasonable necessity or propriety for different laws
for the objects or places embraced within or excluded from the class.
There must be something suggested by a difference in the situation and
circumstances of the subjects placed in different classes, which discloses
the necessity or propriety for different legislation in respect thereto.
The classification must be founded upon legitimate differences in
situation, population, or inherent condition. The places or things in-
cluded must have some characteristics or peculiarities distinguishing
them from those which are excluded. The basis must be sufficiently
broad to include all subjects whose conditions and wants render such
legislation equally appropriate. Unless the statute is curative or
remedial, and therefore temporary, the classification must not be based
upon existing conditions only, but provision must be made for future
acquisitions to the class as other subjects acquire the characteristics
which form the basis of the classification. When population is the basis
of classification, except in the case of cities, which is governed by sec-
tion 36 of article 4 of the constitution (Laws 1899, p. vi), the subject-
matter must be such as suggests a necessity for the legislation arising
out of the fact of population.

In 1898 the people adopted section 36 of article 4 of the constitution
(Laws 1899, p. vi), which authorizes a certain classification of cities
upon the basis of population. In Alexander v. City of Duluth, 77 Minn.
445, 448, 80 N. W. 623, it was held that this amendment did not repeal
section 33 and section 34 of article 4, but authorizes the legislature to
make population a basis of classification, although there is no natural
relation between the subject-matter of the proposed law and the number
of people in the classified cities. It authorizes the classification of cities
for purposes of general legislation on the basis of population therein
specified, although such cases would not previously have been germane
to the purpose or subject-matter of the proposed law. Le Tourneau
v. Hugo, 90 Minn. 420, 97 N. W. 115.

But, as said in State v. Justus, 90 Minn. 474, 97 N. W. 124, it does
not follow that for other reasons an act may not be unconstitutional
within the prohibitions of sections 33 and 34 of article 4. It was held
that chapter 356, p. 575, Laws 1901, was void, because it adopted as a
basis of classification cities having a population of ten thousand or

more having a system of sewer or waterworks, for legislation prohibiting any person, firm, or corporation engaged in the plumbing business from employing as journeymen plumbers any person not duly registered. Cities, under section 36 of article 4, could be classified for the purposes of legislation upon the general subject of the regulation of the business or occupation of plumbers, but, as there was no apparent reason why the health or comfort of people in cities of less than ten thousand inhabitants did not require the protection of the law as much as those of over ten thousand the classification was held arbitrary and improper. It did not include all who were subject to the same conditions and whose wants demanded the same legislation. See also State v. Ames, 87 Minn. 23, and State v. Schraps, supra, page 62.

3. It may be worth while to call attention to some of the cases in this state which illustrate the application of these general principles and show the course of the decisions upon the construction of the constitutional provisions in question.

(a) State v. Donaldson, 41 Minn. 74, 42 N. W. 781; Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249, 41 N. W. 974; Johnson v. St. Paul & D. R. Co., 43 Minn. 222, 45 N. W. 156, 8 L. R. A. 419; and Allen v. Pioneer Press Co., 40 Minn. 117, 41 N. W. 936, 3 L. R. A. 532, 12 Am. St. Rep. 707, apply the general principles which have guided the courts in determining what is class legislation. In the Donaldson case a classification of dealers in medicines based upon the location of their place of business in respect to the distance to drug stores was held reasonable. In the Lavallee and Johnson cases a classification of employers for the purpose of legislation relating to fellow servants was sustained. In State v. Cooley, 56 Minn. 540, 58 N. W. 150, the question of classification received very full consideration, and it was held that a law special in form, might, nevertheless, be general in fact. In Bausher v. City of St. Paul, 72 Minn. 539, 75 N. W. 745, chapter 248, p. 459, Laws 1897, which required notice to cities and villages of injuries for which damages are to be claimed as a condition precedent to the right to maintain an action, was held to be a general law. In State v. Sullivan, 72 Minn. 126, 75 N. W. 8, it was held that population was a proper basis for the classification of counties for the purpose of fixing the compensation of county and city officials. The

court said (page 132): "The subject of classification by population is so largely a matter of policy, and the considerations which enter into it are so numerous and complex, that the legislature must necessarily be allowed a large discretion in the matter; and the courts ought not to hold a statute invalid or special legislation, unless it appears very clearly that the basis of classification adopted is purely arbitrary."

In Alexander v. City of Duluth, 57 Minn. 47, 58 N. W. 866, chapter 210, p. 348, Laws 1893, was held to be special legislation because it adopted and applied existing special legislation contained in the charters of various cities. So, in State v. Johnson, 77 Minn. 453, 80 N. W. 620, it was held that chapter 40, p. 38, Laws 1899, was special legislation regulating the affairs of school districts, because it was an attempt to adopt as part thereof the provisions of a number of diverse special laws relating to the management of public schools in the cities. But in State v. Minor, 79 Minn. 201, 81 N. W. 912, this case was overruled, and it was held that chapter 77, p. 80, Laws 1899, was not special legislation, because it did not necessarily rest upon existing special legislation, but might be carried into effect through existing general laws. In State v. District Court, 84 Minn. 377, 87 N. W. 942, section 1, c. 292, p. 358, Laws 1899, was held valid. The statute provided that:

> Whenever the common council in any city of this state having at the last preceding state census more than 50,000 inhabitants shall consider it necessary to procure grounds for a public market, such common council shall appoint a committee, etc.

It was contended that the census referred to was the one "last preceding" the enactment of the law, and that therefore no cities could in the future enter the class by increase of population; but it was held that the words "last preceding" referred to the state census which might immediately precede in point of time the action of the council, and that the law was therefore general. See State v. Rogers, supra, page 322. In State v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L. R. A. 297, 89 Am. St. Rep. 571, chapter 237, p. 348, Laws 1901, providing for the Torrens system of registering land titles, was held to be general legislation against the contention that population was not a proper basis for classification for such purposes. It was said that

facts might exist which fairly suggested the practical necessity or propriety for different legislation in respect to land titles in counties of over seventy five thousand inhabitants. In Beck v. City of St. Paul, 87 Minn. 381, 92 N. W. 328, section 10, c. 351, p. 465, Laws 1899, which prohibited the creation of an indebtedness in excess of a five per cent. limit in all cities having over eight thousand inhabitants, so far as it related to municipalities having more than ten thousand people, is valid under section 36 of article 4 of the constitution, which authorizes the classification of cities upon the basis of population.

In State v. Stoffels, 89 Minn. 205, 94 N. W. 675, chapter 252, p. 398, Laws 1901, prohibiting and punishing the keeping of blind pigs within the limits of any prohibition district, was held to be general legislation. The court said: "True it is that the statute places the prohibition districts of the state in a class by themselves, but the classification includes all localities and districts wherein the issuance of licenses for the sale of intoxicating liquors is or may be prohibited by law, and the statute applies equally to all persons and places within such districts." In Le Tourneau v. Hugo, 90 Minn. 420, 97 N. W. 115, it was held that an act (chapter 75, p. 79, Laws 1901) authorizing cities having a population of more than fifty thousand to issue bonds to construct a bridge across any navigable canal in such city was a general law, as it applied to all cities having the designated population, and the presence of the navigable canal was not an element of classification. In State v. Ames, 91 Minn. 365, 98 N. W. 190, chapter 151, p. 154, Laws 1899, regulating the manner of drawing jurors in counties having a population of two hundred thousand, was held constitutional. The court said: "The classification is not arbitrary and is not based upon existing circumstances only, but has reference to a condition which in the opinion of the legislators exists in largely populated counties." In State v. Justus, 91 Minn. 447, 98 N. W. 325, 64 L. R. A. 510, 103 Am. St. Rep. 521, it was held that chapter 362, p. 652, Laws 1903, which prohibited the keeping open of butcher shops for the sale of meats, and other business places, on any portion of Sunday, while it authorized the selling of tobacco and confectioneries, was not such an unreasonable discrimination between occupations as to make the statute invalid under the constitution.

In Stees v. Bergmeier, 91 Minn. 513, 98 N. W. 648, it was held that the different conditions surrounding urban and rural property was a sufficient basis for a classification relating to leases. Chapter 31, p. 31, Laws 1901. The court said: "The common law recognizes the distinction, and so does the fundamental law of our state (Const. art. 1, § 15), and it has also been noticed in the opinions of this court. Johnson v. Albertson, 51 Minn. 333, 53 N. W. 642; Kiewert v. Anderson, 65 Minn. 495, 67 N. W. 1031, 60 Am. St. Rep. 487. The classification is a proper one." In State v. Rogers, 93 Minn. 55, 100 N. W. 659, it was held that a substantial distinction existed between cities which have, and those which have not, issued bonds for the construction of an armory. Chapter 83, p. 107, Laws 1903, authorized cities having a population of fifty thousand or upwards to issue bonds for the construction of an armory, but provided that no bonds should be issued under the provision of the act by any city which theretofore had issued its bonds to provide for the purchase of a site and the construction of an armory pursuant to the provisions of chapter 33, p. 84, Laws 1902. It was held that the classification was within the provisions of the amendment of 1899. Section 36, article 4, of the constitution. The act under consideration did not apply to all the cities having the necessary population of the class, but the majority of the court thought the conditions were such as to justify the creation of a different or subclass based upon the circumstances of the previous issue of bonds for the same purpose under an earlier statute.

(b) There are, on the other hand, numerous cases in which legislation which clearly violated the constitutional provisions has been held invalid. In Nichols v. Walter, 37 Minn. 264, 33 N. W. 800, the statute classified counties for the purpose of locating the county seat. Counties in which within six months the question had been submitted to a vote of the people constituted one class, and all others another class. In the former a three-fifths vote was made necessary to locate the county seat, while a majority was sufficient in all other cases. The court said: "There is nothing in the event which is the basis of classification which suggests any necessity or propriety for a different rule." The classification was therefore held to be purely arbitrary, and the statute void. In State v. Sheriff of Ramsey County, 48 Minn. 236, 51 N. W.

112, 31 Am. St. Rep. 650, it was held that the statute must treat alike all of the class to which it applies, and must bring within this classification all who are similarly situated or subject to the same conditions. Chapter 375, p. 1027, Sp. Laws 1889, prohibited the emission of dense smoke within the city of St. Paul with certain limitations as to the distance, location, and surroundings, with the proviso that "nothing herein contained shall be construed to apply to manufacturing establishments, using the entire product of combustion, and the heat, power, and light produced thereby, within the building wherein the same are generated, or within a radius of three hundred feet therefrom." The classification was held improper. Justice Vanderburgh said: "The statute is leveled against the nuisance occasioned by dense smoke, and it can make no practical difference in what business the owners or occupants of the buildings in which such smoke is produced are engaged, or whether the heat evolved from the combustion of the fuel producing such smoke is applied to the generation of steam or other useful purposes; or, further, whether steam power is used in manufacturing, or is applied to other uses, as a grain elevator or hoisting apparatus in a warehouse."

In State v. Ritt, 76 Minn. 531, 79 N. W. 535, the statute under consideration attempted to classify counties on the basis of population for the purpose of determining the manner of choosing assessors. The act (chapter 140, p. 139, Laws 1899) provided that in each county having a population of not less than one hundred thousand and not over one hundred eighty five thousand the county assessor should be elected. It thus provided for one county assessor for the whole county, instead of one for each municipal division, as provided by the existing general laws. It was admitted that population might be a proper basis for the classification of counties for the purpose of choosing assessors, but, as there was no apparent reason suggested by necessity or by the difference in the situation or circumstances of counties having a population of not less than one hundred thousand and not over one hundred eighty five thousand and counties having a population of over one hundred eighty five thousand, the classification was held arbitrary and incomplete. It did not include all the members of the class, but ex-

cluded some whose conditions and wants rendered such legislation· equally necessary and appropriate to them.

Murray v. Board of Co. Commrs. of Ramsey County, 81 Minn. 359, 84 N. W. 103, 51 L. R. A. 828, 83 Am. St. Rep. 379, is a good illustration of the rule that classification must rest on some characteristic or· peculiarity plainly distinguishing the places included from those excluded. Chapter 260, p. 484, Laws 1897, provided for the treatment of inebriates at public expense in counties having fifty thousand or more inhabitants. Chief Justice Start said: "Classification on the basis of· population is proper for the purpose of legislation upon certain subjects, but not upon all, and the precise question here to be determined is whether there is any apparent natural reason why the treatment of . indigent inebriates at the expense of the public should be limited to· the counties having a population of fifty thousand or more and all other counties excluded. Or, in other words, is there such a difference· between urban and rural drunkenness and its consequences to the· drunkard, his family, and the public as to naturally suggest the necessity or propriety of a classification on the basis of population for the· purpose of legislation upon the subject of the cure, at the cost of the public, of indigent inebriates?" The act was held invalid.

In Duluth Banking Co. v. Koon, 81 Minn. 487, 84 N. W. 335, chapter 290, p. 526, Laws 1897, which provided for a distinctive method· for the collection of taxes in counties where the taxes for prior· years exceeded thirty mills on the dollar of the assessed valuation of· all the real estate was held unconstitutional. The court said: "It· seems impossible to suggest any substantial reason why classification for statutory purposes should be based upon a comparison of the total· sum on account of forfeited lands in any one county." In State v.. Walker, 83 Minn. 295, 86 N. W. 104, chapter 99, p. 122, Laws 1897, which imposed a limit as to the amount of money which certain· counties could raise by taxation each year, was held invalid, as there· was nothing in the situation, circumstances, or inherent differences· of the counties which suggested the propriety of different legislation with respect to these particular counties. The classification was purely· arbitrary. In Hetland v. Board of Co. Commrs. of Norman County, 89 Minn. 492, 95 N. W. 305, chapter 133, p. 191, Laws 1903, which.

authorized counties which at the time of its passage had expended $7,000 for building a courthouse to issue bonds for completing the construction of the building, was held invalid, because of the adoption of an arbitrary and illusive basis of classification. The court said: "It is unique, novel, and the first attempt the legislature has ever made to adopt as a basis for legislation the amount of money expended for a given public improvement. * * * Such a limitation would clearly be an arbitrary and unwarranted classification and without the semblance of reason to support it." In Webb v. Downes, 93 Minn. 457, 101 N. W. 966, section 8, c. 149, p. 322, Laws 1895, which provided that only warehousemen who were licensed under the act could sell personal property to satisfy his lien thereon, was invalid, under sections 33 and 34, article 4, of the constitution. In Thomas v. City of St. Cloud, 90 Minn. 477, 97 N. W. 125, chapter 50, p. 62, Laws 1903, authorizing the issue of bonds for the repurchase of waterworks by cities of ten thousand inhabitants or less which had owned the city waterworks and sold the same with a right reserved to repurchase the same, was invalid, for the reason that it adopted an arbitrary basis of classification. See State v. Schraps, supra, page 62.

(c) There is another class of cases which forms an exception to some of the general principles applied in the preceding cases. When the statute is remedial or curative the classification is legal, if it includes within the class all the subjects which are affected by the conditions which it is sought to remedy, or the evils it is sought to cure. Necessarily this class forms an exception to the general rule that classification cannot be based upon existing conditions alone. The very object of the statute is to remedy a present condition, and if possible avoid its repetition. State v. Spaude, 37 Minn. 322, 34 N. W. 164; Cobb v. Bord, 40 Minn. 479, 42 N. W. 396; Flynn v. Little Falls E. & W. Co., 74 Minn. 180, 77 N. W. 38, 78 N. W. 106; State v. City of Thief River Falls, 76 Minn. 15, 78 N. W. 867; Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623; State v. Ames, 87 Minn. 23, 91 N. W. 18; Kaiser v. Campbell, 90 Minn. 375, 96 N. W. 916; State v. Gunn, 92 Minn. 436, 100 N. W. 97; Merchants' Nat. Bank v. City of East Grand Forks, 94 Minn. 246, 102 N. W. 703; State v. Henderson, supra, page 369.

4. It is settled, by the decisions of this court cited above and by the courts of other states, that curative statutes or remedial acts which apply to all places, things, or subjects which are affected by the conditions which are to be remedied are not special acts within the meaning of the constitutional prohibitions. Innumerable acts of this character appear in the statute books.

In State v. Spaude, supra, it appeared that the village of Gaylord had attempted to incorporate under chapter 73, p. 72, Laws 1883. The act was subsequently held unconstitutional because it attempted to delegate legislative powers to the district court. Chapter 231, p. 305, Laws 1885, was then enacted for the purpose of validating the incorporation of such villages. It declared that all villages which had attempted to incorporate under the act before the decision was announced "are hereby duly incorporated as villages, with the same territorial boundaries specified in the order or judgment of the district court declaring any such village to be an incorporated village under the provisions of said act; and all such villages shall possess and are hereby endowed with all the franchises, rights, powers and privileges and subject to the duties in said act enumerated and contemplated," etc. It was contended that this act was void because in conflict with sections 33 and 34 of article 4 of the constitution. But, said Chief Justice Gilfillan: "Its operation is not confined to any part of the state. Whenever in any part of the state there is a village that comes within its classification, it operates. A law to be general need not operate alike upon all the inhabitants of the state, or all the cities, or all the villages in the state. To require that would be utterly impracticable. A law is general which operates alike upon all the inhabitants or all the cities, or all the villages, or other subjects of a class of such subjects of legislation. That for the purpose of legislation it may be necessary to make, and that the legislature may make, such classification, is undoubted. The only practical limitation to this power is that the classification shall be based upon some natural reason—some reason suggested by necessity, by some difference in the situation and circumstances of the subjects classified suggesting the necessity of different legislation with respect to them—and shall not be merely arbitrary, with no apparent reason except a desire to evade, under the forms of a general law, the con-

stitutional inhibition of special legislation. The act of 1883 was not contrary to the provisions of the constitution above quoted. Had it, been valid in other respects, and the incorporation of villages under it had failed by reason of omitting some of its provisions, a curative act, like the act of 1885, if it reached all villages within that predicament, could hardly have been called a special law within the meaning of the constitution. A law curing certain defects in the execution or record of deeds, though its operation would of course be confined to deeds or records with such defects, would, if it included all of that class, be a general, and not a special, law. We think the act of 1885 is valid."

In Flynn v. Little Falls El. & W. Co., 74 Minn. 180, 192, 77 N. W. 38, 78 N. W. 106, chapter 191, p. 325, Laws 1893, was attacked as special legislation. The court, by Justice Mitchell, said: "The ground of attack is that the classification adopted by the act is arbitrary. We think that counsel for the plaintiff have overlooked the fact that this is merely a curative act, intended to provide for a temporary object, to wit, the legalizing of a certain class of illegal ordinances and contracts. For such a purpose, a really distinctive class may, and often must, be based upon existing temporary circumstances. Cobb v. Bord, 40 Minn. 479, 42 N. W. 396; Iowa R. Land Co. v. Soper, 39 Iowa, 112. Hence the act is not subject to the objection of being special legislation, if it in fact includes all existing village ordinances and contracts similarly situated as respects the subject and object of the act."
In State v. City of Thief River Falls, 76 Minn. 15, 78 N. W. 867, as to chapter 81, p. 88, Laws 1897, which attempted to legalize the incorporation of all cities theretofore organized or attempted to be organized under the first 21 sections of chapter 8, pp. 16, 21, Laws 1895, Chief Justice Start said: "The act is a curative statute, and was intended to legalize the incorporation of a certain class of de facto municipal corporations. It applies to and operates uniformly upon all cities of the class designated in the statute, and the basis of classification adopted is clearly a valid one. It is therefore a general and not a special law and is constitutional."

Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623, applies a similar if not identical principle. Chapter 50, p. 47, Laws 1899, authorized cities of a certain class to issue bonds to take up their floating

97 M.—27

indebtedness, and this was held a general law because its purposes were temporary and remedial only. The court said: "It must be conceded that such are the provisions of the act, and that it does not necessarily operate alike upon all cities having a population of more than fifty thousand at the date of the passage of the act, nor upon cities which thereafter acquired such population. The rule is well settled that classification with a view to the enactment of general laws must not be based upon existing circumstances only or those of limited duration, except where the object of the law is itself a temporary one. The exception to the rule is as firmly established as the rule itself, and a distinctive class may be based upon existing conditions, when the purposes of the law are temporary only. Cobb v. Bord, 40 Minn. 479, 42 N. W. 396; State v. Cooley, 56 Minn. 548, 58 N. W. 150; Flynn v. Little Falls E. & W. Co., 74 Minn. 180, 77 N. W. 38, 78 N. W. 106; State v. City of Thief River Falls, 76 Minn. 15, 78 N. W. 867; Iowa R. Land Co. v. Soper, 39 Iowa, 112; 32 Am. Law Reg. 851." After stating that all existing conditions are not a proper basis of classification, although the purpose sought be temporary, the court continued: "The origin or cause, however, of the existing conditions, whether it be unforeseen disaster or official incompetency, goes not to the power of the legislature to make them the basis of classification, but to the propriety of doing so. If we keep in mind these general principles while reading the act in question, our attention is at once challenged by the fact that it is a complete and independent law, and that the basis of classification is an existing condition—that is, the present floating indebtedness of the cities of the state having a population of over 50,000—and that its purposes are only temporary and remedial; and, further, that the act recognizes that the continuance of a floating debt of such cities in excess of their incomes is an evil which ought promptly to be remedied, but not repeated in the future."

In State v. Ames, 87 Minn. 23, 91 N. W. 18, the act in question (chapter 134, p. 165, Laws 1901) provided that the city council in every city of the state now or hereafter having fifty thousand inhabitants may, upon certain conditions, issue bonds for the purpose of anticipating local improvements when special assessments are to be made upon the property benefited. The bonds were to be sold and the proceeds

placed in a special fund to be used for the temporary payment of the expenses of such improvements. It further provided that "no bonds shall be issued under the provisions of this act after the expiration of six months from the time of the approval of this act." The act was held to be remedial and valid under the authority of Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623.

The rule was again applied in State v. Gunn, 92 Minn. 436, 100 N. W. 97. A board of county commissioners of Pine county directed the construction of a highway under the authority supposed to be conferred by chapter 302, p. 712, Laws 1895. Warrants were issued to the contractor, who presented them to the county treasurer, by whom they were indorsed: "Presented for payment, Sept. 28th, 1896. Not paid for want of funds." The statute was held unconstitutional, and in view of the hardships resulting the legislature enacted chapter 181, p. 253, Laws 1901, entitled: "An act to authorize county commissioners to issue certificates of indebtedness in certain cases."

This statute provided that in all cases where any public highway theretofore laid out by the commissioners of any county pursuant to chapter 302, p. 712, Laws 1895, and for the construction of which orders have been drawn upon the county treasurer for the whole or any part of the contract price, and presented for payment, and indorsed, "Not paid for want of funds," for the payment of which no provision has been made, they shall become a lawful indebtedness of such county. The commissioners were also authorized to issue and negotiate certificates of indebtedness of the county for amounts sufficient to take up and pay such orders. It was claimed that the act was void as special legislation, because it singled out those cases where the holders had presented their warrants or orders to the county treasurer and had them indorsed, "Not paid for want of funds," and makes them a lawful indebtedness of the counties while all other warrants, orders, and bonds remain void, even though they may have been issued for the same purpose and even to the same man. But the court, by Chief Justice Start, said: "We do not in fact know, and have no means of knowing, whether there were similar orders outstanding which had been presented for payment. The presumption is that there were not, and that all orders would in the ordinary course of business be presented and in-

dorsed as the act provided. The act is a remedial one, and applies to all counties of the state which have established roads and issued orders for their construction, under the provisions of the act, for which no provision for their payment has been made. The existing conditions which are made the basis of this classification are such as to suggest a practical necessity and a manifest propriety for different legislation with reference to such counties than would be necessary or proper for the whole state. We therefore hold that the classification was proper, and that the act is not special legislation."

That statutes which are intended to cure some particular condition are not regarded as special legislation is illustrated by the recent case of Merchants Nat. Bank v. City of East Grand Forks, 94 Minn. 246, 102 N. W. 703.

In State v. Squires, 26 Iowa, 340, it was held that, while the legislature, in view of the provision of the state constitution, could not pass a special law incorporating an independent school district, it nevertheless had the power to pass a curative act legalizing the defective organization of a school district already in existence under the general law authorizing the creation of independent districts. The constitution of Iowa (art. 3, § 30) provides that the general assembly shall not pass any local or special laws for laying out, opening, and working roads and highways, etc. "In all other cases where a general law can be made applicable all laws shall be general and of uniform operation throughout the state." This prohibition in the enumerated cases is held to be absolute. State v. City (Iowa) 65 N. W. 818.

In Fair v. Buss, 117 Iowa, 164, 90 N. W. 527, it appeared that the board of supervisors of Ida county had established a highway without personal notice to the landholders, as required by section 936, Code 1873. The acts of the supervisors were therefore void, but the general assembly thereafter passed an act which recited in detail all the proceedings of the supervisors in the particular case, and provides: "That the establishing and locating of all highways and proceedings and acts of the board of supervisors and other officers of Ida county, Iowa, in establishing highways by said order of the board of supervisors on the sixth day of June, 1876, be and the same are hereby legalized and declared valid and binding in all

respects the same as if the law had been strictly complied with."
Justice Sherwin said: "There is nothing in the claim that it was lo-
cal legislation. While the legislature may not have had the power to
prescribe one sort of notice in one county and another in the next,
after the act was done, it was within its constitutional power to legal-
ize that particular act, because it could not be made of general appli-
cation at that time."

Givens v. Hillsborough (Fla.) 35 South. 88, very closely resembles
the case at bar. The commissioners of Hillsborough county had at-
tempted to issue certain bonds, but had been enjoined because of
certain irregularities in the resolutions of the board upon which the
proposed issue was based. The legislature then passed an act "To
legalize and validate any county bonds heretofore favorably voted up-
on and afterwards advertised for sale by any county of the state of
Florida for the purpose of constructing macadamized roads," etc.
Laws 1903, p. 248, c. 5253. It provides that: "Whenever any county
bonds for the purpose of constructing macadamized and other hard
surfaced highways in such county and to fund the outstanding in-
debtedness of any such county or for either or both such purposes
shall have heretofore been favorably voted for at a county election
held for such purpose and afterwards advertised for sale, such bonds
be, and are hereby declared legal and valid," etc.

Justice Maxwell said: "The second objection raised to the curative
act of the legislature is that, while in form a general act, it is in
fact special and obnoxious to the provisions of section 20 of ar-
ticle 3 of the constitution. * * * The contention that the
act is special rests upon the allegations in the bill that it applies
only to past transactions, and that it affects only Hillsborough coun-
ty and these particular bonds; that Hillsborough county was the
only county in the state attempting to issue bonds for the purpos-
es mentioned, and that this was known to the legislature in pass-
ing the act; and that no other county in the state can at any time bring
itself within the provisions of the act. These allegations, of course,
upon demurrer to the bill, are to be taken as true. The question
then presented is whether such legislation is special legislation for
one county or general legislation founded upon a reasonable and le-

gitimate basis of classification, and, if the latter, whether it will still retain this character, though but one county is embraced within the class to which the act applies. The counties to which the act applies are those where the proposed issue has been favorably voted upon at a county election held for that purpose, and afterwards advertised for sale; in other words, to counties where the proposed issue, even though characterized by some irregularity of procedure, is acceptable to the people of the county who have ratified it, and to the officials of the county who have proceeded to carry the public will into effect. This seems a reasonable basis of classification." See also Ex parte Wells, 21 Fla. 280; Bloxham v. Florida, 35 Fla. 625, 17 South. 902.

The rule that curative acts are not necessarily special legislation was approved by the supreme court of the United States in Read v. Plattsmouth, 107 U. S. 568, 2 Sup. Ct. 208, 27 L. Ed. 414. The city of Plattsmouth, without authority of law, issued bonds for the purpose of raising money to construct a high school building. The legislature thereafter passed an act entitled: "An act to legalize the proceedings of the city council of the city of Plattsmouth in reference to the construction of a high school building." The constitution of the state forbade the legislature to pass any special act conferring corporate power. "It is contended," says Justice Matthews, "that the act in question, by legalizing the bonds of the city, void because it had no power to issue them, is legally equivalent to an act conferring upon the city power to issue bonds, which is conferring corporate power, and, being a special act, is therefore unconstitutional. But this conclusion we cannot adopt.   *   *   *   The statute operates upon the transaction itself, which had already previously been consummated, and seeks to give it a character and effect different in its legal aspect from that which it had when it was in fieri." In support of the proposition that the legislature, without constitutional power to pass a special law, could yet pass a curative act legalizing a defectively organized school district, the court cited with approval State v. Squires, supra.

The judgment appealed from is therefore affirmed.